TOBIAS WEISS *v.* STATEWIDE GRIEVANCE COMMITTEE
(14666)

CALLAHAN, BORDEN, NORCOTT, KATZ and PALMER, Js.

Argued September 24—decision released November 16, 1993

*Tobias Weiss,* pro se, with whom was *Morris Teig,* for the appellant (plaintiff).

*Elizabeth F. Collins,* assistant bar counsel, for the appellee (defendant).

KATZ, J. The principal issue in this appeal is whether the defendant, the statewide grievance committee, properly reprimanded the plaintiff, attorney Tobias Weiss, for professional misconduct, after concluding that he had violated Disciplinary Rule 5-104 (A) of the Code of Professional Responsibility (DR 5-104 [A])[1] by accepting an 18 percent interest in a hotel project as payment for legal services rendered to three clients. The plaintiff appealed to the trial court from the statewide grievance committee's decision to issue the reprimand.[2] After remanding the appeal to the statewide grievance committee for a clarification of the standard of proof used in issuing the reprimand, the trial court affirmed the statewide grievance committee's decision and dismissed the plaintiff's appeal.

The plaintiff appeals from the judgment of the trial court, claiming that the reprimand should be rescinded because the trial court improperly: (1) concluded that there was sufficient evidence in the record to support the statewide grievance committee's conclusion that the plaintiff had violated DR 5-104 (A); (2) concluded that the doctrines of res judicata and collateral estoppel, as applied to the settlement of the plaintiff's civil action against his clients, did not preclude the statewide grievance committee from making a finding of attor-

---

[1] The plaintiff's conduct in question occurred during the years 1981 through 1984, prior to the adoption of the Rules of Professional Conduct, effective October 1, 1986, which replaced the Code of Professional Responsibility. As it existed in 1981 through 1984, Disciplinary Rule 5-104 (A) of the Code of Professional Responsibility provided: "A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

[2] The plaintiff's appeal was authorized by *Pinsky* v. *Statewide Grievance Committee,* 216 Conn. 228, 232, 578 A.2d 1075 (1990), recognizing the trial court's authority to review a committee order by virtue of its inherent authority over attorney conduct.

ney misconduct; (3) upheld the statewide grievance committee's decision to sustain its reprimand in response to the plaintiff's request for reconsideration; and (4) accepted the statewide grievance committee's report in response to its remand request to clarify the standard of proof used in issuing the reprimand. We affirm the judgment of the trial court.

The record discloses the following facts. In 1980, the plaintiff, an attorney admitted to the Connecticut Bar and practicing in Stamford, rendered legal services to three brothers, Raymond Zebroski, Leon Zebroski and Stanton Zebroski, in connection with a project to develop a full-service hotel (hotel project) on land owned by the Zebroskis in Stamford. Specifically, the plaintiff assisted the Zebroskis in obtaining approval from the Connecticut Development Authority for a $9,300,000 state bond issue. In 1981, after obtaining approval for the bond issue, the plaintiff sought to collect his legal fees for services rendered in connection with the hotel project. At that time, because the Zebroskis were financially unable to pay the plaintiff, the parties reached an oral agreement assigning the plaintiff an 18 percent interest in the hotel project in satisfaction of his legal fees. Thereafter, in 1984, the Zebroskis entered into a joint venture with another group to develop a Super 8 Motel on the property, and excluded the plaintiff from the hotel project.

In 1985, the plaintiff filed a civil suit against the Zebroskis claiming that he was owed $350,000 in legal fees for obtaining the bond issue and $150,000 in fees for other legal services rendered in connection with the hotel project during the years 1980 through 1984. Additionally, the plaintiff sought reimbursement in the amount of $7000 for his out-of-pocket contributions to the hotel project. The Zebroskis filed a counterclaim, alleging violations of the Connecticut Unfair Trade

Practices Act, General Statutes § 42-110a et seq., negligence, intentional interference with contract, breach of fiduciary duty, abuse of process and fraud.

In 1988, while the civil suit was pending, Raymond Zebroski filed a complaint with the statewide grievance committee,[3] alleging, inter alia, that the plaintiff had mishandled the hotel project and had engaged in a conflict of interest. Pursuant to General Statutes (Rev. to 1987) § 51-90e (a) (1) and Practice Book § 27F (a) (1),[4]

[3] General Statutes (Rev. to 1987) § 51-90e provides in relevant part: "(a) Any person may file a written complaint alleging attorney misconduct. A grievance panel may, on its own motion, initiate and file a written complaint alleging attorney misconduct. A complaint against an attorney shall be filed with the statewide bar counsel. Within five days of the receipt of a complaint the statewide bar counsel shall:

"(1) Forward the complaint to the appropriate grievance panel as determined under rules of court; and

"(2) Notify the complainant and the respondent, by certified mail, return receipt requested, of the panel to which the complaint was forwarded. The notification to the respondent shall be accompanied by a copy of the complaint.

"(b) The respondent shall have the right to respond within ten days of receipt of notification to the grievance panel to which the complaint has been referred.

"(c) The statewide bar counsel shall keep a record of all complaints filed with him. . . ."

At the time in question, Practice Book § 27F provided in relevant part: "(a) Any person may file a written complaint alleging attorney misconduct. A grievance panel on its own motion may also file a complaint. Complaints against attorneys shall be filed with the statewide bar counsel. Within five days of the receipt of a complaint the statewide bar counsel shall:

"(1) forward the complaint to a grievance panel in the judicial district in which the respondent maintains his principal office or his residence, provided that, if the respondent does not maintain such an address in this state, the statewide bar counsel shall forward the complaint to any grievance panel; and

"(2) notify the complainant and the respondent, by certified mail with return receipt, of the panel to which the complaint was sent. The notification to the respondent shall be accompanied by a copy of the complaint.

"The respondent shall have the right to respond within ten days of receipt of notification. The response shall be sent to the grievance panel to which the complaint has been referred."

[4] See footnote 3.

the statewide grievance committee referred the complaint to the grievance panel (panel) for the Stamford-Norwalk judicial district. Subsequently, on August 5, 1988, the plaintiff filed with the panel a memorandum and exhibits in opposition to Zebroski's complaint.[5] On October 31, 1988, pursuant to General Statutes § 51-90f (a) and (d) and Practice Book § 27F (c) and (f),[6] the panel concluded that there was probable cause to believe that the plaintiff's conduct had created a conflict of interest in violation of DR 5-104 (A).[7] Pursuant to General Statutes § 51-90g (a) and Practice Book § 27J (a),[8] the statewide grievance committee assigned

---

[5] See General Statutes (Rev. to 1987) § 51-90e (b) and Practice Book § 27F (a) (2), footnote 3.

[6] General Statutes § 51-90f (a) and (d) provide: "(a) Each grievance panel shall investigate with the assistance of the grievance counsel assigned to such panel any complaint referred to it by the statewide grievance committee or statewide bar counsel to determine whether probable cause exists that the attorney is guilty of misconduct. . . .

"(d) The panel shall refer the record of its investigation, together with its determination that probable cause or no probable cause exists that the attorney is guilty of misconduct, to the committee for appropriate action and any such determination shall be a matter of public record."

Practice Book § 27F (c) and (f) provide: "(c) The grievance panel, with the assistance of the grievance counsel assigned to it, shall investigate each complaint to determine whether probable cause exists that the attorney is guilty of misconduct. . . .

"(f) The panel shall, within ninety days from the date the complaint was referred to it, file the following with the statewide grievance committee: its written determination concerning whether probable cause exists that the respondent is guilty of misconduct, a copy of the complaint and response, a transcript of any testimony heard by the panel, a copy of any investigatory file and copies of any documents, transcripts or other written materials which were available to the panel. These materials shall constitute the panel's record in the case. . . ."

[7] The panel also concluded that there was probable cause to believe that the plaintiff had violated the Code of Professional Responsibility by failing to put his fee agreement in writing.

[8] General Statutes § 51-90g (a) provides in pertinent part: "The statewide grievance committee may designate at least three members of the committee, including at least one-third who are not attorneys, to serve as a reviewing subcommittee for each determination made by a panel on a complaint. . . . The statewide grievance committee or the subcommittee, if

the complaint to a reviewing subcommittee. On February 9, 1989, the reviewing subcommittee held a hearing on the matter.[9] In its "proposed decision,"[10] dated

any, shall hold a hearing concerning the complaint if the panel determined that probable cause exists that the attorney is guilty of misconduct. . . ."

Practice Book § 27J (a) provides in pertinent part: "Upon receipt of the record from a grievance panel, the statewide grievance committee may assign the case to a reviewing committee which shall consist of at least three members of the statewide grievance committee, at least one third of whom are not attorneys . . . ."

[9] See General Statutes § 51-90g (a), footnote 8.

General Statutes § 51-90g (b) provides: "Any hearing held by the committee or subcommittee shall be public and on the record. The complainant shall be entitled to be present at all hearings on the complaint and to have counsel present. At such hearing the respondent shall have the right to counsel, to be heard in his own defense and to present evidence and witnesses in his behalf. At the conclusion of the evidence, the complainant and the respondent shall have the opportunity to make a statement either individually or through counsel. The committee or subcommittee may request oral argument."

At the time in question, Practice Book § 27J (c) and (d) provided: "(c) If the grievance panel determines that probable cause exists that the respondent is guilty of misconduct, the statewide grievance committee or the reviewing committee shall hold a hearing on the complaint. . . . All hearings following a determination of probable cause shall be public and on the record.

"(d) The complainant and respondent shall be entitled to be present at all hearings and other proceedings on the complaint at which testimony is given and to have counsel present. At all hearings the respondent shall have the right to be heard in his own defense and by witnesses and counsel. The complainant and the respondent shall not be entitled to examine or cross examine witnesses unless requested by the reviewing committee. At the conclusion of the evidentiary phase of a hearing, the complainant and the respondent shall have the opportunity to make a statement, either individually or through counsel. The statewide grievance committee or reviewing committee may request oral argument."

[10] General Statutes § 51-90g (c) provides in pertinent part: "The subcommittee shall conclude any hearing or hearings and shall render its proposed decision not later than ninety days from the date the panel's determination of probable cause or no probable cause was filed with the statewide grievance committee."

At the time in question, Practice Book § 27J (e) provided in pertinent part: "[T]he reviewing committee shall render its proposed decision and file it with the statewide grievance committee. The reviewing committee's record in the case shall consist of a copy of all evidence it received or con-

April 28, 1989, the reviewing subcommittee found merit in the panel's probable cause determination regarding the conflict of interest,[11] concluded that the plaintiff had violated DR 5-104 (A) and recommended that the statewide grievance committee reprimand the plaintiff.[12] On May 18, 1989, the statewide grievance committee adopted the reviewing subcommittee's proposed decision and reprimanded the plaintiff.[13]

Thereafter, on September 7, 1989, the civil action between the plaintiff and the Zebroskis was settled, resulting in a judgment by stipulation of $18,000 in favor of the plaintiff on both his complaint and the

sidered, including a transcript of any testimony heard by it, and its proposed decision. The record shall be sent to the statewide grievance committee. In its proposed decision, the reviewing committee shall recommend either dismissal of the complaint, reprimand of the respondent by the statewide grievance committee or presentment of the respondent to the superior court. The reviewing committee shall forward a copy of the proposed decision to the complainant and the respondent."

[11] The reviewing subcommittee did not find probable cause that the plaintiff's oral fee agreement violated the Code of Professional Responsibility.

[12] General Statutes § 51-90g (e) provides in relevant part: "The subcommittee may propose in its decision to . . . reprimand the attorney . . . ." See Practice Book § 27J (e), footnote 10.

[13] General Statutes § 51-90h (b) provides in relevant part: "[T]he statewide grievance committee shall review the record before the subcommittee and any statements filed with it, and shall issue a decision dismissing the complaint, reprimanding the respondent, directing the statewide bar counsel to file a presentment against the respondent or referring the complaint to the same or a different reviewing subcommittee for further investigation and proposed decision."

At the time in question, Practice Book § 27M provided in relevant part: "[T]he statewide grievance committee shall issue a written decision either dismissing the complaint, reprimanding the respondent, directing the statewide bar counsel to file a presentment against the respondent in the superior court or referring the complaint to the same or a different reviewing committee for further investigation and a proposed decision. Before issuing its decision, the statewide grievance committee may, in its discretion, request oral argument. The statewide grievance committee shall forward a copy of its decision to the complainant, the respondent and the grievance panel which investigated the complaint. The decision shall be a matter of public record."

Zebroskis' counterclaim. Subsequently, on November 16, 1989, the plaintiff requested that the statewide grievance committee reconsider its decision, claiming that newly discovered evidence relating to the settlement of the civil action in his favor warranted a reversal.[14] On December 21, 1989, the statewide grievance committee concluded that the settlement of the civil action and the alleged new evidence did not warrant a reversal of the reprimand.

On March 6, 1991, the plaintiff appealed to the Superior Court from the statewide grievance committee's final decision.[15] In his appeal the plaintiff claimed, inter alia, that the factual findings of the statewide grievance committee were not supported by clear and convincing evidence as required by *Statewide Grievance Committee* v. *Presnick*, 215 Conn. 162, 171–72, 575 A.2d 210 (1990). In light of this contention, on August 22, 1991, the trial court remanded the appeal

---

[14] In making his request for reconsideration, the plaintiff argued that disposition of the Zebroskis' counterclaim in the civil action in his favor established for purposes of the grievance complaint that the Zebroskis' rights had not been affected adversely by his conduct. Additionally, the plaintiff submitted the following "new" evidence: (1) deposition testimony taken in the civil action from the Zebroskis that disclosed their educational backgrounds and business experience; and (2) deposition testimony taken in the civil action from attorney James Farrell and the Zebroskis that revealed the Zebroskis had retained Farrell as legal counsel from 1978 to at least 1984. The plaintiff argued that the new evidence established "at least in substance" that DR 5-104 (A) had been satisfied because from this evidence the statewide grievance committee fairly could have inferred that the Zebroskis, as "seasoned, knowledgeable, experienced business people," either had spoken with Farrell about the 18 percent fee arrangement or had made a conscious decision not to do so. The plaintiff also argued that, "at the very least," the new evidence and resulting inferences undermined the statewide grievance committee's ability to establish a violation of DR 5-104 (A) by clear and convincing proof. Finally, the plaintiff argued that for purposes of DR 5-104 (A), "full disclosure" did not require him expressly to caution the Zebroskis to obtain independent counsel. In support of this argument, the plaintiff relied on a Massachusetts case, *Pollock* v. *Marshall*, 391 Mass. 543, 462 N.E.2d 312 (1984).

[15] See footnote 2.

to the statewide grievance committee for "a further report indicating whether its factual findings and conclusion that the plaintiff . . . was guilty of attorney misconduct were based on clear and convincing proof."

On September 20, 1991, the statewide grievance committee reported, in response to the court's remand directing it to review its decision to issue a reprimand, that it had employed the clear and convincing evidence standard of proof. After receiving this report, the trial court, on November 20, 1992, affirmed the statewide grievance committee's decision and denied the plaintiff's appeal. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). Additional facts will be set forth hereinafter where pertinent.

This court established the standard of judicial review of statewide grievance committee decisions in *Pinsky* v. *Statewide Grievance Committee,* 216 Conn. 228, 234–35, 578 A.2d 1075 (1990). Although the statewide grievance committee is not an administrative agency; *Sobocinski* v. *Statewide Grievance Committee,* 215 Conn. 517, 526, 576 A.2d 532 (1990); the court's review of its conclusions is similar to the review afforded to an administrative agency decision. *Pinsky* v. *Statewide Grievance Committee,* supra. Practice Book § 27N (f), adopted after *Pinsky* to govern appeals from decisions of the statewide grievance committee to issue a reprimand, sets forth the applicable standard of review: "Upon appeal, the court shall not substitute its judgment for that of the statewide grievance committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are: (1)

[i]n violation of constitutional, Practice Book or statutory provisions; (2) in excess of the authority of the committee; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . ."

Thus, in reviewing a decision of the statewide grievance committee to issue a reprimand, neither the trial court nor this court takes on the function of a fact finder. Rather, our role is limited to reviewing "the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct." *Pinsky* v. *Statewide Grievance Committee,* supra, 234. Additionally, in a grievance proceeding, the standard of proof applicable in determining whether an attorney has violated the Code of Professional Responsibility is clear and convincing evidence. *Statewide Grievance Committee* v. *Presnick,* supra, 171–72. The burden is on the statewide grievance committee to establish the occurrence of an ethics violation by clear and convincing proof. Id.

Applying these principles to the facts before us, we conclude that the statewide grievance committee's findings are supported by clear and convincing evidence and that its conclusions are legally and logically correct. Accordingly, we affirm the judgment of the trial court upholding the statewide grievance committee's decision to reprimand the plaintiff.

I

We first address the plaintiff's claim that the trial court improperly determined that the record sufficiently supports the statewide grievance committee's conclusion that he had violated DR 5-104 (A). As it

existed in the years in question, DR 5-104 (A) provided: "A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

Disciplinary Rule 5-104 (A) is not a per se or absolute prohibition of business transactions between lawyers and clients and does not absolutely prohibit an attorney from receiving an interest in a client's property as a fee for legal services. The plaintiff and the statewide grievance committee agree that the rule is implicated only when a lawyer enters into a business transaction with a client and two conditions are satisfied. First, the lawyer and the client must have "differing interests" in the business transaction. Second, the client must expect the lawyer to exercise professional judgment in the business transaction for the protection of the client. When both of these conditions exist, a lawyer can avoid violating the rule only by obtaining client consent after full disclosure.

Although the plaintiff agrees that this is the correct interpretation of DR 5-104 (A), he argues that the statewide grievance committee failed to show by clear and convincing evidence that his conduct violated the rule. Specifically, the plaintiff contends that there was insufficient evidence to show that: (1) he and the Zebroskis had "differing interests" under DR 5-104 (A); and (2) the Zebroskis expected him to exercise his professional judgment for their protection with respect to the hotel project. We reject both of these contentions.

"Differing interests," as defined in the Code of Professional Responsibility during the years in question, included "every interest that will adversely affect

either the judgment or loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest." Additionally, this court recently described DR 5-104 (A) as encompassing "a transaction in which the [attorney] overreached his client to pursue his own self-interest." *Statewide Grievance Committee* v. *Rozbicki,* 219 Conn. 473, 486, 595 A.2d 819 (1991), cert. denied, U.S. , 112 S. Ct. 1170, 117 L. Ed. 2d 416 (1992). In view of this court's interpretation of the rule and in light of the broad definition of "differing interests," there is clear and convincing evidence in the record to support the statewide grievance committee's conclusion that the plaintiff and the Zebroskis had differing interests in the hotel project.

At the reviewing subcommittee's February 9, 1989 hearing, Raymond Zebroski testified that when he and his brothers decided to sell a portion of their interest in the hotel project for the purpose of raising capital, the plaintiff counseled against such a sale, urging them instead to continue their own efforts to develop the project and attempting to persuade them to purchase adjacent properties. Raymond Zebroski further testified that he was not sure in what capacity the plaintiff was acting when he offered this advice—as an attorney, a land broker, a money broker or someone "looking out for his own interests."

On the basis of this evidence, the statewide grievance committee reasonably could have concluded that the plaintiff and the Zebroskis had "differing interests" in the hotel project because the plaintiff's 18 percent interest in the project had "adversely affected [his] judgment or loyalty to [the Zebroskis]," thereby causing him to "[overreach] his client to pursue his own self-interest." *Statewide Grievance Committee* v. *Rozbicki,*

supra, 486. We therefore sustain the trial court's conclusion that the record sufficiently supports the existence of differing interests.[16]

There also is clear and convincing evidence in the record to support the conclusion that the Zebroskis expected the plaintiff to continue as counsel to protect their interests in the hotel project. At the reviewing subcommittee's February 9, 1989 hearing, the plaintiff testified that he and the Zebroskis had a longstanding attorney-client relationship prior to 1981. The plaintiff admitted that, after accepting his 18 percent interest, he did not inform the Zebroskis that he would no longer be their lawyer with respect to the hotel project. Additionally, Raymond Zebroski testified that he and the plaintiff had based the figure of 18 percent in part on the $150,000 of legal fees claimed by the

[16] The plaintiff separately argues that his conduct did not create "differing interests" as that phrase was understood in 1981. In support of his argument, the plaintiff relies principally on an informal opinion of the Connecticut Bar Association Committee On Professional Ethics dated November 18, 1980. We reject the plaintiff's argument for several reasons. First, in light of *Statewide Grievance Committee* v. *Rozbicki*, 219 Conn. 473, 486, 595 A.2d 819 (1991), cert. denied,      U.S.     , 112 S. Ct. 1170, 117 L. Ed. 2d 416 (1992), in which this court described DR 5-104 (A), the informal opinion and other citations offered in support of the plaintiff's argument are not controlling. Second, the plaintiff's citations merely reflect that under *appropriate circumstances* there is nothing inherently improper with an attorney obtaining an interest in client property to protect a fee. In this case, however, the statewide grievance committee found that such appropriate circumstances did not exist. That is, the statewide grievance committee found that the plaintiff had created differing interests, that the Zebroskis had the expectation of continued representation and that the plaintiff had failed to obtain their consent after full disclosure. Finally, by focusing on 1981, the plaintiff's argument incorrectly assumes that his acceptance of the 18 percent fee arrangement in that year was the only conduct relevant to the statewide grievance committee's conclusion that he violated DR 5-104 (A). In fact, the plaintiff's continued representation of the Zebroskis after 1981 in connection with the hotel project in which he then held an 18 percent interest was what the statewide grievance committee found relevant in concluding that he violated the rule. For these reasons, we reject the plaintiff's argument.

plaintiff for his performance of legal services from inception to "completion of the [hotel] project." Viewed as a whole, the evidence permitted the statewide grievance committee to reach the reasonable conclusion that the Zebroskis envisioned that the plaintiff would continue to act as their lawyer with respect to the hotel project. Moreover, in the plaintiff's amended civil complaint, dated February 23, 1987, he contended that he continued to render legal services to the Zebroskis in connection with the hotel project after 1981.[17] The plaintiff submitted the civil complaint to the statewide grievance committee on August 5, 1988, with his memorandum and exhibits in opposition to Raymond Zebroski's grievance complaint. Thus, the civil complaint was part of the record before the statewide grievance committee from early on in the proceedings, and, at the very least, constitutes an evidentiary admission.[18]

Based on this evidence, clear and convincing proof existed in the record to support the statewide grievance committee's logical conclusion that the Zebroskis expected the plaintiff to continue to act as their law-

[17] Paragraphs four and five of the first count of the civil complaint state: "4. At various times beginning in 1979 until and including 1984, [the Zebroskis] bought and took title to certain parcels of real estate . . . .

"5. [The plaintiff] rendered the legal services to [the Zebroskis] involved in acquiring the real estate."

Paragraphs thirty and thirty-three of the third count state: "30. During the years 1980-1984, [the] plaintiff spent more than 2,000 hours rendering such services for [the Zebroskis]. . . .

"33. The reasonable value of the services rendered by [the] plaintiff was $350,000 for obtaining approval for the issuance of industrial revenue bonds of the State of Connecticut in the amount of $9,300,000, and $150,000 for legal services rendered."

[18] In light of *In re Application of Pagano,* 207 Conn. 336, 340, 541 A.2d 104 (1988), in which we held that there are no adversary parties in grievance proceedings, we recognize that the plaintiff's submission of the civil complaint to the statewide grievance committee raises the question of whether his admission in the complaint qualifies as a judicial admission. See *Dreier* v. *Upjohn Co.,* 196 Conn. 242, 244, 492 A.2d 164 (1985). We, however, leave this issue for another day.

yer in connection with the hotel project. We conclude that the trial court properly determined that the record before the statewide grievance committee supported its conclusion that he violated DR 5-104 (A).

## II

The plaintiff next claims that the trial court incorrectly concluded that the doctrines of res judicata and collateral estoppel did not preclude the statewide grievance committee from making a finding of attorney misconduct. This claim stems from the settlement of the plaintiff's civil litigation against the Zebroskis in 1988, which resulted in a stipulated judgment in favor of the plaintiff with respect to the Zebroskis' counterclaim. According to the plaintiff, the counterclaim encompassed an allegation that the plaintiff had violated the Code of Professional Responsibility.[19] The plaintiff asserts that, because both the civil complaint and the grievance complaint involve the same claims and the same allegations between the same parties on the same issue of an ethics violation, the trial court should have concluded that the civil action had a preclusive effect on the statewide grievance committee's decision. Specifically, the plaintiff argues that the trial court should have concluded that: (1) the Zebroskis were barred from making the same claims and alleging the same facts in the grievance proceeding that they made in their counterclaim; (2) the statewide grievance committee was barred from relying on the same claims and allegations as a basis for its decision; (3) disputes of fact in the grievance pro-

[19] In his brief to this court, the plaintiff states that the counterclaim contained a "claim of breach of the rules of ethics." Examination of the counterclaim reveals that in paragraph 16, count one, the Zebroskis alleged that "[the plaintiff's] conduct violated the lawyers [sic] Code of Professional Responsibility." Each successive count of the counterclaim incorporated paragraph sixteen. Thus, it appears that the counterclaim alleged a general violation of the Code of Professional Responsibility in five counts. We assume that it is to this general allegation of an unspecified violation that the plaintiff refers.

ceeding should have been resolved in favor of the plaintiff as a result of the civil litigation; and (4) the stipulated civil judgment and its effect negate the existence of clear and convincing evidence that the plaintiff violated DR 5-104 (A). We reject the plaintiff's arguments.

The doctrines of res judicata and collateral estoppel are well established. The two doctrines " 'protect the finality of judicial determinations, conserve the time of the court and prevent wasteful relitigation. . . .' " *Virgo* v. *Lyons,* 209 Conn. 497, 501, 551 A.2d 1243 (1988). Res judicata, or claim preclusion, is distinguishable from collateral estoppel, or issue preclusion. Under the doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim. *Slattery* v. *Maykut,* 176 Conn. 147, 156–57, 405 A.2d 76 (1978). In contrast, collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. *DeLaurentis* v. *New Haven,* 220 Conn. 225, 239, 597 A.2d 807 (1991).

Although the two doctrines are distinct from each other, both operate only against the same parties or those in privity with them. "While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party against whom collateral estoppel [or res judicata] is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding. . . . A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity." (Citations omitted; internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Jones,* 220 Conn. 285, 304, 596 A.2d 414 (1991).

The trial court concluded that neither doctrine applied to prevent the statewide grievance committee from issuing its reprimand because the parties to the grievance proceeding were not the same as, or in privity with, those in the civil action. We agree with the trial court's conclusion.

We have stated that "[t]here are no adversary parties [to grievance proceedings] in the technical legal sense, although our reports contain cases which, in their titles, carry as parties not only the names of the petitioners [or respondents] but those of bar examining committees and grievance committees." (Internal quotation marks omitted.) *In re Application of Pagano*, 207 Conn. 336, 340, 541 A.2d 104 (1988). Thus, in a legal sense, neither the plaintiff nor the statewide grievance committee was a "party" to the grievance proceeding against whom the doctrines of res judicata or collateral estoppel can properly be applied.

Moreover, even were we to view the plaintiff and the statewide grievance committee as parties to the grievance proceeding, the doctrines of res judicata and collateral estoppel are nonetheless inapplicable. The parties in the civil action were the plaintiff herein, Weiss, and his former clients, the Zebroskis. The statewide grievance committee was neither named as nor in privity with any party to the civil action. As a result, the statewide grievance committee's interests were neither protected nor litigated in the civil action. We conclude, therefore, that the trial court properly determined that the doctrines of collateral estoppel and res judicata were inapplicable to the grievance proceeding.

### III

The plaintiff next claims that the trial court improperly upheld the statewide grievance committee's decision to sustain its reprimand in response to the

plaintiff's request for reconsideration in light of newly discovered evidence. As stated above, the statewide grievance committee issued its initial decision to reprimand the plaintiff on May 18, 1989. The civil action between the plaintiff and the Zebroskis was settled on September 7 of that same year.

Thereafter, on November 16, 1989, the plaintiff filed a request for reconsideration of the statewide grievance committee's decision, based on the existence of "newly discovered evidence" relating to the settlement of the civil action.

First, the plaintiff argued that the stipulated judgments established, for purposes of the grievance complaint, that the Zebroskis' rights had not been affected adversely by his conduct. Additionally, the plaintiff submitted the following "new" evidence: (1) deposition testimony taken in the civil action from the Zebroskis that disclosed their educational backgrounds and business experience; and (2) deposition testimony taken in the civil action from James Farrell, an attorney, and the Zebroskis that revealed that the Zebroskis had retained Farrell as legal counsel from 1978 to at least 1984. The plaintiff argued that the new evidence established "at least in substance" that DR 5-104 (A) had not been violated because from this evidence the statewide grievance committee reasonably could have inferred that the Zebroskis, as "seasoned, knowledgeable, experienced business people," either had spoken with Farrell about the 18 percent interest arrangement or had made a conscious decision not to do so. The plaintiff also argued that, "at the very least," the new evidence and resulting inferences undermined the statewide grievance committee's ability to establish a violation of DR 5-104 (A) by clear and convincing proof.

Finally, the plaintiff argued that for purposes of DR 5-104 (A), "full disclosure" did not require him

expressly to caution the Zebroskis to obtain independent counsel. In support of this argument, the plaintiff relied on a Massachusetts case, *Pollock* v. *Marshall,* 391 Mass. 543, 462 N.E.2d 312 (1984).

The statewide grievance committee reviewed the plaintiff's arguments and declined to reverse its reprimand. In a letter dated December 21, 1991, the statewide grievance committee stated that it had "considered the record of the . . . grievance complaint and the . . . submission of the [plaintiff]" and had "concluded that the settlement of the civil action between the parties, and the present knowledge of the Respondent that the Complainant had access to other counsel in the early 1980s does not warrant the reversal of the Committee's reprimand. In light of the knowledge known to the Respondent at the time of the conflict of interest, the Committee stands on its decision."

According to the plaintiff, the statewide grievance committee's letter reflects an unwillingness to weigh the "actual circumstances" and a refusal to consider facts that were unknown to him when he agreed to accept an 18 percent interest in the hotel project. This approach, the plaintiff argues, permitted the Zebroskis as complainants to "conceal" relevant information that, if known by the statewide grievance committee prior to its decision, would have affected its ultimate findings and conclusions. We disagree.

The plaintiff's argument incorrectly assumes that the statewide grievance committee failed even to consider the potential relevance of his proffered evidence. In its December 21 letter, however, the statewide grievance committee stated that it had "considered" the plaintiff's submissions and was, nevertheless, upholding its original decision based on the plaintiff's knowledge when the conflict of interest occurred. In contrast to the plaintiff's claim, the statewide grievance commit-

tee had therefore weighed the "actual circumstances" and had concluded that those circumstances were irrelevant in light of the plaintiff's knowledge in 1981. This conclusion is logical and legally correct, and is clearly and convincingly supported by the evidence in the record.

We already have concluded that the trial court properly determined that the stipulated judgments had no preclusive effect on the grievance proceeding. Further, Farrell's deposition testimony contained no new relevant evidence. Even with the addition of the testimony, the record before the statewide grievance committee continued to reflect that the Zebroskis expected the plaintiff to represent them in the hotel project. Finally, the deposition testimony concerning the Zebroskis' relative sophistication and educational backgrounds had no bearing on whether the plaintiff's conduct violated DR 5-104 (A). Because none of the plaintiff's proffered new evidence impacted the statewide grievance committee's initial findings, there was no persuasive reason advanced to that committee for it to withdraw from its original decision. Accordingly, we conclude that the trial court correctly upheld the statewide grievance committee's decision to sustain its reprimand.

## IV

The plaintiff's final claim is that the trial court improperly accepted the statewide grievance committee's report issued in response to the remand requesting that the statewide grievance committee clarify the standard of proof used in issuing the reprimand. A chronological review of events is necessary to the resolution of this claim. The statewide grievance committee issued its initial decision to reprimand the plaintiff on May 18, 1989. Shortly thereafter, on May 30, 1989, the Appellate Court held that the standard of proof for attorney disciplinary matters is "clear and convincing

evidence." *Statewide Grievance Committee* v. *Presnick,* 18 Conn. App. 475, 477, 559 A.2d 227 (1989); *Statewide Grievance Committee* v. *Presnick,* 18 Conn. App. 316, 323, 559 A.2d 220 (1989).[20] Subsequently, in November, 1989, the plaintiff requested that the statewide grievance committee reconsider its initial decision.

On December 21, 1989, the statewide grievance committee reconsidered the plaintiff's case and issued a final decision letter stating its intention to sustain its reprimand. Thereafter, on August 22, 1991, the trial court first heard the plaintiff's appeal and issued its remand to the statewide grievance committee to clarify the standard of proof it had used in deciding to reprimand the plaintiff. In response to the trial court's remand, the statewide grievance committee held a hearing on September 19, 1991, at the conclusion of which it submitted its report to the court. In its report, the statewide grievance committee stated that, although it had used the preponderance of the evidence standard when first considering the plaintiff's case in May, 1989, it had nevertheless applied a clear and convincing evidence standard of proof when reconsidering the matter, at the plaintiff's request, in December, 1989. The trial court accepted the report and thereafter issued its decision to deny the plaintiff's appeal.

The plaintiff generally asserts that the report is procedurally and substantively deficient because it is "conclusory, with no detail to demonstrate its conclusion." Specifically, the plaintiff argues that a legitimate application of the new, more restrictive standard of proof procedurally required the convocation of a reviewing subcommittee, which did not occur. The plaintiff also advances several challenges to the credibility of the statewide grievance committee's assertion

---

[20] This court later upheld the clear and convincing evidence standard in *Statewide Grievance Committee* v. *Presnick,* 215 Conn. 162, 171–72, 575 A.2d 210 (1990).

that, in reconsidering the plaintiff's case in December, 1989, it applied the clear and convincing evidence standard of proof. First, he argues that the report is not believable because the statewide grievance committee's letter disposing of the plaintiff's request for reconsideration makes no mention of its application of a different standard of proof. Second, the plaintiff argues that, because the statewide grievance committee disposed of his request for reconsideration on the basis that the evidence was irrelevant, it had no occasion to apply the new standard of proof. Finally, the plaintiff argues that, in the absence of minutes of the meeting or any other committee record documenting an application of the new standard, the statewide grievance committee's report is not to be believed. We reject all of the plaintiff's arguments.

The plaintiff's procedural challenge regarding the failure of the statewide grievance committee to convoke a reviewing subcommittee is without merit. The plaintiff has cited neither a statutory provision nor a Practice Book section in support of his assertion that, in order legitimately to reconsider his case in light of the new standard of proof, the statewide grievance committee had to convene a reviewing subcommittee. On the contrary, under General Statutes § 51-90g (a) and Practice Book § 27J (a), convocation of a reviewing subcommittee by the statewide grievance committee is discretionary.[21] Additionally, under the applicable statutory provisions and Practice Book sections, the statewide grievance committee and a reviewing subcommittee have parallel powers to take evidence and hold hearings.[22] Moreover, because Practice Book § 27J (e)

[21] See footnote 8.

[22] See General Statutes § 51-90g (a) and (b), footnotes 8 and 9, respectively; Practice Book § 27J (c), footnote 9. Additionally, Practice Book § 27J (b) provides: "The statewide grievance committee and the reviewing committee shall have the power to issue a subpoena to compel any person to appear before it to testify in relation to any matter deemed by the statewide grievance committee or the reviewing committee to be relevant

mandates that the reviewing subcommittee send its record to the statewide grievance committee, the statewide grievance committee had before it all relevant and available evidence when it reconsidered the plaintiff's case.[23] For all of these reasons, we reject the plaintiff's argument.

The plaintiff's challenges to the report's credibility are equally without merit. In its September 20, 1991 report, the statewide grievance committee clearly represented to the trial court that it had been apprised of the new standard of proof and accordingly had applied the clear and convincing evidence standard in December, 1989, when, at the plaintiff's request, it reconsidered his case. When making his request for reconsideration, the plaintiff argued that, "at the very least," his submitted evidence and the resulting inferences undermined the statewide grievance committee's ability to prove a violation of DR 5-104 (A) *by clear and convincing evidence*. Thus, by the plaintiff's own request, the statewide grievance committee was alerted to the proper standard of proof.

In attacking the report's credibility, the plaintiff has offered no supporting evidence—aside from his own suppositions—to indicate that the statewide grievance committee either was unaware of its obligations to conform to the law or had any motivation not to tell the truth. The trial court took the statewide grievance committee at its word and we see no reason why this court should not do the same. Accordingly, we conclude that the trial court properly accepted the statewide grievance committee's report.

The judgment is affirmed.

In this opinion the other justices concurred.

to the complaint and to produce before it for examination any books or papers which, in its judgment, may be relevant to such complaint. Any such testimony shall be on the record."

[23] See Practice Book § 27J (e), footnote 10.