[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed June 9, 1997
INTRODUCTION
This is an appeal by two attorneys, Joseph F. Budny ("Attorney Budny") and James K. Robertson ("Attorney Robertson") (collectively "plaintiffs"), from the issuance to each of them of a reprimand (hereinafter, collectively, "reprimand") by the Statewide Grievance Committee ("Committee"). The parties have stipulated that the plaintiffs are aggrieved by the reprimand and that they have standing to maintain this appeal. Accordingly, it is found that the plaintiffs are prejudiced, for purposes of § 27N(f) of the Practice Book, by the reprimand.
The Committee conducted two hearings on this matter, after which it issued its decision in which it found the plaintiffs had violated Rule 3.3(d) of the Rules of Professional Conduct ("Rule 3.3(d)") and reprimanded them. Rule 3.3(d) provides:
 In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.
FACTS
The undisputed facts which are relevant to the disposition of this appeal are:
 1. Until some time during the summer of 1993, Robert L. Hughes ("complainant") was employed as president of Fabricated Metals Products, Inc. ("FMP");
 2. The law firm in which the plaintiffs were partners ("plaintiffs' firm") represented FMP in regard to the termination of the complainant's employment;
3. The complainant was represented by Attorney Harold CT Page 6656 L. Cummings ("Attorney Cummings") in regard to the termination of his employment;
 4. Attorney Budny practices in the field of business law, and Attorney Robertson practices in the field of litigation;
 5. From approximately August 5, 1993 until August 16, 1993, Attorneys Cummings and Budny discussed the claims of their clients relative to the termination of the complainant's employment;
 6. On August 12, 1993, at the request of the plaintiffs' firm, Judge Pellegrino granted an ex parte motion ("discovery motion") for expedited discovery in an action ("FMP case") brought that day by the plaintiffs' firm on behalf of FMP against the complainant;
 7. The discovery motion was titled "Ex Parte Motion For Expedited Discovery";
 8. No copy of the discovery motion was provided by the plaintiffs' firm to the complainant or to Attorney Cummings, prior to Judge Pellegrino's granting that motion;
 9. All pleadings and other documents prepared by the plaintiffs' firm in the FMP case were drafted by an associate in that firm, Attorney Pamela J. Norley ("Attorney Norley"), at the direction of Attorney Robertson;
 10. At the direction of Attorney Robertson, Attorney Norley submitted to Judge Pellegrino, together with the discovery motion and the other papers initiating the FMP case, a notice of deposition and a request for production directing the complainant to appear at 10:00 a.m. on August 18, 1993 at the offices of the plaintiffs' firm, with materials described therein, to be deposed, as well as a subpoena duces tecum directing the complainant to do the same;
 11. For reasons not material to the disposition of this appeal, the complainant did not appear to be deposed at the designated time and place;
12. After 10:00 a.m. on August 18, 1993, Attorney CT Page 6657 Robertson directed Attorney Norley to file a motion requesting a capias in order to compel the complainant's appearance at his deposition, and Attorney Robertson directed Attorney Norley to fax a copy of that motion to Attorney Cummings at the time the motion was filed;
 13. On August 18, 1993, Attorney Norley prepared a motion titled "Motion to Issue Capias To Enforce Subpoena" ("capias motion"), arranged to have a messenger file the capias motion with the Superior Court Clerk's Office in Waterbury ("clerk's office") and faxed a copy of the capias motion to Attorney Cummings;
 14. The capias motion was not accompanied by supporting affidavits, but it did contain a certification that a copy of it had been both mailed and faxed to Attorney Cummings;
 15. Although no one from the plaintiffs' firm asked anyone in the clerk's office to request Judge Pellegrino to act on the capias motion without notice to the complainant and a hearing, and in the absence of any communication between Judge Pellegrino and counsel for either of the parties in the FMP case, Judge Pellegrino granted the capias motion, and later on August 18, 1993, a capias ("capias") was issued;
 16. The capias (presumably a copy) was served on the complainant during the evening of August 18, 1993, although the complainant was not taken into custody at that time;
 17. On August 20, 1993, pursuant to the capias, the complainant was brought to the courthouse in Waterbury by a deputy sheriff;
 18. Under date of August 19, 1993, Attorney Cummings filed in the FMP case a motion titled "Motion for Finding of Professional Misconduct" ("misconduct motion");
19. The misconduct motion states, in relevant part:
 "The defendants in the above-captioned case respectfully represent to the Court that Attorney Patricia J. Norley, Attorney James Robertson and Attorney Joseph Budny have violated Rule 3.3 of CT Page 6658 the Rules of Professional Conduct in obtaining a Capias from this Court against the defendant, Robert L. Hughes.
. . .
 "The defendants respectfully request that the Court find that the plaintiff's attorneys have violated . . . Rule 3.3(d) of the Rules of Professional conduct.
 "The defendants respectfully request that the Court order such sanctions and such enter (sic) protective orders as the Court deems appropriate to prevent abuse of process in the future by the plaintiff and its attorneys in this proceeding."
 20. On August 20, 1993, Judge Pellegrino conducted a hearing ("August 20 hearing") in the FMP case during which he heard the issue whether the complainant should be required to attend his deposition, as requested in the capias motion, as well as the misconduct motion and a motion to quash (not relevant to this appeal) filed by Attorney Cummings;
 21. Attorneys Norley and Cummings attended the August 20 hearing;
 22. After he introduced himself to the court at the August 20 hearing, the first remarks by Attorney Cummings to the court were in the following colloquy:
 THE COURT: And Mr Hughes' attorney wishes to be heard; is that correct.
MR. CUMMINGS: Yes, your Honor.
 Two things, your Honor. First of all, the two motions that I filed this morning, one is a motion to quash the capias and for protective orders regarding discovery in this case, and the other is a request for a finding of imposition of sanctions by this Court for what I feel to be professional misconduct in this case by the attorneys for the plaintiff, Fabricated Metal Products. CT Page 6659
 I might say at this point, your Honor, that I do not make that motion lightly, and I've been a practicing attorney for twenty-three years, and in my recollection, this is the first time I ever filed such I a document. I just say that from the point of view that my client was brought here in custody this morning by the deputy sheriff based on an ex parte capias which was issued, and therefore, because I believe this does involve the court and the integrity of the court, I should at least bring the facts to the court's attention as I know it.
 23. The August 20 hearing continued with argument by Attorneys Norley and Cummings until Attorney Cummings suggested the matter be passed to afford counsel an opportunity to "see if we can scope out an order . . .";
 24. The August 20 hearing was then recessed. I Following the recess, Attorneys Norley and Cummings reported an agreement to the court, following which the court entered a temporary injunction. The following colloquy concluded the August 20 hearing:
 THE COURT: I'm going to quash the capias and I'm not going to make any order relative to the deposition because there's no need for a expedited deposition.
MS. NORLEY: Not at this time.
MR. CUMMINGS: Thank you.
MS. NORLEY: Thank you, your Honor.
THE COURT: That should take care of all matters.
 25. The complainant thereafter filed, with the Committee, a grievance complaint ("complaint") against the plaintiffs.
DISCUSSION
In Weiss v. Statewide Grievance Committee, 227 Conn. 802
(1993), the court expressed the standard of proof applicable in grievance proceedings before the Committee, as follows: CT Page 6660
 The burden is on the statewide grievance committee to establish the occurrence of an ethics violation by clear and convincing proof. (Citation omitted.) Id., 812.
Given that standard, this appeal presents the following issues:
 1. Was there clear and convincing proof before the Committee that the capias was issued as the result of an ex parte proceeding?
 2. Was there clear and convincing proof before the Committee that Attorney Budny played a role in regard to the capias? and,
 3. Was the Committee effectively preempted from acting on the complaint because the misconduct motion had been brought before Judge Pellegrino at the August 20 hearing?
I. Ex Parte Proceeding
The plaintiffs argue that, for several reasons, the proceeding from which the capias resulted was not an "ex parte proceeding", as that phrase is used in Rule 3.3(d). The court finds one of those reasons persuasive and dispositive of this issue.
At oral argument, counsel for the Committee acknowledged that, in order to violate Rule 3.3(d), an attorney who initiates a proceeding must have a reasonable anticipation that the court will act in regard to it on an ex parte basis. (T, 9) When asked what clear and convincing proof was presented to the Committee from which it could draw the inference that the plaintiffs had a reasonable anticipation that action would be taken on the capias motion on an ex parte basis, counsel for the Committee cited (T, 24) the following excerpts from the transcript of the hearings:
 MS. HOYT: It's your understanding that Attorney Norley did nothing to expedite this being brought to the judge?
MR. BUDNY: No, she did not see it — I mean, I have no CT Page 6661 personal knowledge. It is my understanding that it was brought over by a messenger and given to the clerk. I am sure that Pam would have called the clerk and said because we're looking for quick relief, we were hoping to have the deposition I believe that next Monday. So obviously it's not something that could come up on short calendar. (R, 32, p. 44). (The parties stipulated that the reference to "Mr. Budny" immediately above should be a reference to Mr. Robertson. [T, 19]); and,
 MR. ROBERTSON: I have no personal recollection. What I understand is that Pam had called over and kept asking, you know, when is it going to be done, because we wanted to get going on it (R, 32, p. 46)
In addition to the transcript excerpts quoted above, the Committee, as support for its position that there was clear and convincing proof before it to support the inference of reasonable anticipation, relies on the fact that the capias motion, as filed with the clerk's office, was not accompanied by a draft of a show cause order.
Boiled down, the Committee relies on the following as clear and convincing proof from which the necessary finding of reasonable anticipation was inferred:
 1) Attorney Robertson's understanding that the capias motion would not go on a short calendar;
 2) Attorney Robertson's understanding that Attorney Norley called the clerk's office several times to inquire as to the status of the capias motion; and,
 3) The fact that the capias motion was not accompanied by a draft of an order to show cause.
Pursuant to Section 27N(f)(5) of the Practice Book (except where otherwise indicated, further section references are to the Practice Book), the Committee can consider only evidence which is probative.[1] Accordingly, the threshold issue is whether each of the items of evidence relied upon by the Committee to support its inference of reasonable anticipation is probative of that inference.
A. Not On Short Calendar CT Page 6662
Does Attorney Robertson's testimony that the capias motion would not go on a short calendar before the date designated for the complainant's deposition make it more probable that the plaintiffs had a reasonable anticipation the court would act on the capias motion on an ex parte basis? The Committee argues that, if a motion cannot be heard on a short calendar within a time frame that will permit the motion's objective to be accomplished, a lawyer can be presumed to have a reasonable anticipation that a court will act on the motion on an ex parte basis. The plaintiffs, on the other hand, argue that such testimony can support other inferences, so that the testimony is, at least, ambiguous and, therefore, not probative. Specifically, the plaintiffs argue that, in this case, a lawyer's understanding that the capias motion would not go on short calendar could lead to either of the following reasonable anticipations:
 The court might specially assign the capias motion to a hearing prior to the date on which the complainant's deposition was scheduled, giving special notice to the movant and to Attorney Cummings, to whom service is certified in the motion; or,
 Attorney Cummings might contact the plaintiffs' firm upon receipt of the copy of the capias motion faxed to him in order to arrange for the complainant's voluntary appearance at his deposition at a time prior to the time designated in the capias motion for that deposition, thereby mooting the need for a capias. (In fact, Attorney Cummings acknowledged seeing the copy of the capias motion which had been faxed to him at approximately 4:45 p. m. on August 18, and on August 19 he responded to the capias motion by a faxed letter to the plaintiffs, to Attorney Norley and to the plaintiffs' firm.) (R, 26)
Because Attorney Robertson's testimony that he understood the capias motion would not go on a short calendar is consistent with each of any one of these conflicting inferences, that testimony does not make any one of them more probable than the others. Accordingly, that testimony is not probative of the inference that the plaintiffs had a reasonable anticipation that the court would act on the capias motion on an ex parte basis. Therefore, the Committee could not rely on that testimony.
B. Inquiries of Clerk's Office CT Page 6663
The Committee argues that the word "it" in Attorney Norley's inquiries of the clerk's office ("when is it going to be done") refers to the ex parte issuance of a capias. However, "it" could also refer to the special assignment of a hearing on the capias motion. Without more, Attorney Robertson's testimony about Attorney Norley's inquires is ambiguous and consistent with each of two inconsistent inferences. Accordingly, it does not make either of those inferences more probable than the other, and it is not probative of the inference that the plaintiffs had a reasonable anticipation that the court would act on the capias motion on an ex parte basis. Therefore, the Committee could not reply on that testimony.
C. Draft Show Cause Order
The Committee argues that if Attorney Robertson believed both that the capias motion would not be assigned on a short calendar and also that the court would not act on it on an ex parte basis, he would have directed Attorney Norley to include a form of a show cause order with it. Ergo, according to the Committee, because no form of a show cause order accompanied the capias motion, it should be inferred that Attorney Robertson expected ex parte action on the capias motion.
Show cause orders are generally issued in the following situations:
 1) When an ex parte order is issued, in order to provide to the subject of the order an early hearing at which a request to vacate or modify the order can be heard; and,
 2) When immediate relief is requested, but an ex parte order is not granted, in order to provide to the applicant an early hearing.
While the failure to include a form of a show cause order with the capias motion is consistent with a reasonable anticipation of ex parte action on it, it is also consistent with two other reasonable anticipations:
 That the court might specially assign the capias motion to a hearing prior to the date on which the complainant's deposition was scheduled; or, CT Page 6664
 That Attorney Cummings might contact the plaintiffs' firm upon receipt of the copy of the capias motion faxed to him in order to arrange for the complainant's voluntary appearance at his deposition at a time prior to the time designated in the capias motion for that deposition, thereby mooting the need for a capias.
The fact that a form of show cause order did not accompany the capias motion does not make any one of these three inferences more probable than the others. Accordingly, it is not probative of the inference that the plaintiffs had a reasonable anticipation that the court would act on the capias motion on an ex parte basis. Therefore, the Committee could not rely on that fact.
D. Contra Evidence
The following evidence, which was before the Committee, is probative of the inference that the plaintiffs did not have a reasonable anticipation that the court would take ex parte action on the capias motion:
 The words "ex parte" appear in the title to the discovery motion which was filed by the plaintiffs' firm, on which the court acted ex parte, but those words do not appear in the title or body of the capias motion;
 There is no Section 123[2] certification on the discovery motion, but there is such a certification on the capias motion; and,
 The discovery motion was accompanied by supporting affidavits, but the capias motion was neither verified nor accompanied by such affidavits.
While evidence was not introduced before the Committee concerning the effect of, or the inferences which can be drawn from, the absence of "ex parte" in the title or body of a motion, or the absence of a verification or affidavits supporting a motion, or the presence of a Section 123 certification on a motion, the court, in its "broad supervisory role . . . in governing attorney conduct"[3], can bring to its review of proceedings before the Committee its understanding of the generally accepted practices and protocols of attorneys before CT Page 6665 the courts. Accordingly, the following observations are made, in the absence of evidence before the Committee to support them.
In our courts, ex parte relief is, generally, extraordinary. In order to obtain it, lawyers normally have to call the court's attention to the fact they are requesting it, and they typically do so by putting the words "ex parte" in the title of the motion or application. In addition, Connecticut practice calls for facts alleged in a request for ex parte relief to be sworn to, either by way of a verification, supporting affidavit, or both. The absence of the words "ex parte" in the title of the capias motion, as well as the absence of a verification or supporting affidavit, are strong indicators that the lawyer(s) who filed the motion neither sought nor expected ex parte action on it.
Further, the capias motion contained the one thing not normally contained in a motion on which a lawyer expects, or desires, ex parte action; a certification of service to opposing counsel. Such service is not required by § 121(a) when ex parte relief is sought, and it is not generally made when such relief is sought, because to do so would provide the subject of the motion with notice of the filing of the motion, prior to its service on the subject, so that the subject could then flee or attempt to avoid service. By certifying service, not only by mail but also by fax, Attorneys Robertson and Norley assured early warning to Attorney Cummings, and presumably to the complainant, of the relief requested, contrary to the usual ex parte motion practice.
The Committee was not required to give weight to any of these undisputed matters. However, they are part of the "reliable, probative, and substantial evidence on the whole record"[4] which the court is obligated to review when deciding whether the Committee's action was clearly erroneous.
 E. Finding Re: Reasonable Anticipation of Ex Parte Proceeding
Because the Committee had no probative evidence before it to support the finding that the plaintiffs had a reasonable anticipation that the court would act on the capias motion on an ex parte basis, and because some probative evidence before the Committee suggests the contrary, the Committee's finding to that effect is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. Because the CT Page 6666 Committee could not find that the plaintiffs had such a reasonable anticipation, and because, as stipulated by the parties, such an anticipation is an essential element of an "ex parte proceeding" within the meaning of Rule 3.3(d), the Committee's conclusion that the plaintiffs violated Rule 3.3(d) is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.
II. Attorney Budny
Attorney Budny is not subject to discipline merely because he was a partner of an attorney who is found to have violated the Rules of Professional Conduct ("Rules"). Rather, Attorney Budny can be disciplined only if he, himself, committed a violation of the Rules, or if he directed a subordinate attorney to do so.
There was no evidence before the Committee on which it could base a finding, or inference, that Attorney Budny played a role in: the drafting or filing of the capias motion; Judge Pellegrino's action on the motion; or, the service on the defendant of the capias. To the contrary, the only evidence bearing on whether Attorney Budny played a role in those matters is Attorney Robertson's uncontradicted testimony that Attorney Robertson directed Attorney Norley to seek a capias (R, 32, p. 35) and a letter from Attorney Norley which corroborates Attorney Robertson's testimony as follows: ". . . at the direction of Mr. Robertson, I prepared an Application for Issuance of a Capias . . ." (R. 15)
In the absence of evidence that Attorney Budny played some role in the seeking, granting or service of the capias, and in the face of undisputed evidence supporting the contrary conclusion, the Committee's finding that Attorney Budny violated Rule 3.3(d) is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.
III. EFFECTIVE PREEMPTION
A. Caselaw
The plaintiffs argue that the Committee abused its discretion under § 27F(a)(2)(F)[5] in entertaining the complaint because:
1) The complaint alleges the same violation of CT Page 6667 Rule 3.3(d) that was alleged in the misconduct motion; and,
 2) The misconduct motion was the subject of a hearing before Judge Pellegrino. (even though Judge Pellegrino did not expressly act on it)
In short, the plaintiffs argue that after an alleged violation of the Rules is brought to the attention of a judge, the Committee cannot act on that alleged violation unless the judge to whose attention it was brought makes a referral to the Committee or to the statewide bar counsel.
In Kligerman v. Statewide Grievance Committee, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV-95-0554620 (February 27, 1996, Maloney, J.) (16 Conn. L. Rptr. 349), the plaintiff, an attorney, obtained a capias. Thereafter, a motion to vacate the capias was heard by the judge who had issued it. The motion to vacate alleged that the plaintiff had misled the court and brought discredit to the legal profession. After a hearing, the judge who had issued the capias struck the allegations in the motion to vacate which related to attorney misconduct and denied the motion. The Committee subsequently issued a reprimand to the plaintiff. While the reviewing court did not address the question whether the judge's having heard the motion to vacate (which, as noted above, included allegations of attorney misconduct) served, by itself, effectively to preempt the Committee from addressing the misconduct issues, the court noted, in sustaining the appeal, that the denial of that motion "conclusively established that there was a substantial legitimate purpose of the capias," and that for the Committee to come to a different conclusion "the committee would have had to find, by clear and convincing evidence, that the judge acted either in ignorance of the facts or arbitrarily and in total abuse of her discretion. There was no such finding, of course." (Underlining added)
Kligerman does not squarely address the effective preemption issue raised by plaintiffs, but it does indicate how far the Committee must go if it is to entertain allegations of attorney misconduct which have previously been considered and dismissed by a judge. That is, the Committee must find such a dismissal to have been an abuse of discretion by the judge, certainly an extraordinary, if not unprecedented, finding.
In Katz v. Statewide Grievance Committee, Superior Court, CT Page 6668 judicial district of Hartford-New Britain at Hartford, Docket No. CV-96-0557186 (November 14, 1996, Maloney, J.), the Committee issued a reprimand. The reviewing court held that the Committee abused its discretion under § 27F(a)(2)(F) by failing to dismiss the matter. The reviewing court in Katz based its decision on the fact that, at the time the Committee issued its reprimand, the ground for the reprimand was then the subject of a motion pending before a judge in the litigation out of which the grievance arose, and that the judge in that underlying litigation had "emphasized that the court, rather than the defendantStatewide Grievance Committee, should hear and decide" the misconduct issue. (Underlining in original.) The reviewing court in Katz observed that, by taking jurisdiction of the matter, the Committee unnecessarily created the potential for conflict between its decision and the decision of the judge in the underlying litigation.
Canon 3B.(3) of our Code of Judicial Conduct provides, in relevant part:
 A judge should take or initiate appropriate disciplinary measures against . . . a lawyer for unprofessional conduct of which the judge may become aware.
Implicit in Canon 3B.(3) is the obligation of a judge to consider and, if appropriate, to investigate allegations of unprofessional conduct.
There is a rebuttable presumption that the actions of a judge comply with the Code of Judicial Conduct. Therefore, in the absence of evidence to the contrary before the Committee, it must be presumed that Judge Pellegrino considered the allegations of unprofessional conduct contained in the misconduct motion and in Attorney Cummings remarks to the court at the August 20 hearing. Because Judge Pellegrino did not initiate any "appropriate disciplinary measures," it is inferred that he found those allegations baseless.
In Kligerman and Katz, the reviewing court found the Committee's refusal to dismiss allegations of misconduct occurring before the court which had been acted on by the court, or which the court had expressed its intent to act on, to be an abuse of discretion. The inference that Judge Pellegrino found the allegations against the plaintiffs to be baseless brings the CT Page 6669 facts in this case in line with those in Kligerman and Katz.
Therefore, it is held that the Committee abused its discretion by refusing to dismiss the complaint.
B. "If Deemed Appropriate"
Section 27F(a)(2)(F) of the Practice Book provides for the dismissal of complaints relating to misconduct in a court action, "if deemed appropriate" by the Committee. While the phrase "if deemed appropriate" appears to invest in the Committee the authority to determine whether to dismiss such allegations, Katz
and Kligerman make that investiture illusory in regard to allegations on which the court has acted, or has expressed its intent to act, by holding it to be an abuse of discretion for the Committee to refuse to dismiss in those situations.
Because it has been inferred that Judge Pellegrino found the allegations against the plaintiffs baseless, under the rule ofKligerman and Katz the Committee could not rely on authority flowing from the phrase "if deemed appropriate" to justify its refusal to dismiss the complaint.
C. Section 27F(a)(2)(F)
Section 27F(a)(2)(F) not only provides for dismissal of allegations of misconduct in a court action of which the court has been made aware, it also makes provision for dismissal of allegations of misconduct occurring in a court action of which the court has not been made aware. In doing so, § 27F(a)(2)(F) clearly expresses the policy that the court is the primary agency for dealing with allegations of attorney misconduct occurring in cases before the court, and that the role of the Committee in such matters is to be available for duty, at the call of the court. This policy is an additional rationale for effectively preempting the Committee from acting in regard to the allegations against the plaintiffs.
CONCLUSION
The appeal is sustained, and the reprimand issued to each of the plaintiffs is vacated.
G. Levine, J.