HON. ROBERT SATTER, JUDGE TRIAL REFEREE.
 

 The plaintiff, an attorney, appeals a decision of the statewide grievance committee reprimanding him for violating rule 1.15 (b) of the Rules of Professional Conduct by failing to safeguard the funds of a client or a third party.
 

 The complaint initiating the grievance procedure against the plaintiff was filed by attorney Mark J. DeAngelis, a former associate of the plaintiffs law firm. The matter was presented to the Windham grievance panel, which, on reviewing the complaint, the plaintiffs
 
 *351
 
 response and supporting affidavits and other documents, found probable cause that the plaintiff violated rules 1.15 (safekeeping of property) and 8.46 (b) and (c) (misconduct) of the Rules of Professional Conduct. The matter was heard then by a reviewing committee of the statewide grievance committee, consisting of attorney J. Patrick Dwyer, Lawrence J. Fagan and James P. Wells. The plaintiff was represented by counsel. The majority of the reviewing committee rendered a proposed decision in which it found by clear and convincing evidence that the plaintiff violated rule 1.15 (b) of the Rules of Professional Conduct and recommended that the statewide grievance committee reprimand the plaintiff. Panel member Dwyer dissented. The statewide grievance committee adopted the proposed decision of the reviewing committee and reprimanded the plaintiff.
 

 The facts found by the reviewing committee are as follows. Attorney Raymond Parlato, a partner in the plaintiffs firm, represented Deborah Wilson in a personal injury action that was settled on September 3, 1987 for $38,000. Parlato deducted $12,666.66 for attorney’s fees and $226.16 for costs. He also retained in escrow $6836.06 to pay a no-fault lien of $2981.06 and physician and hospital bills totaling $3854.17. The balance of $18,271.12 was paid to Wilson.
 

 Thereafter, Parlato negotiated with the no-fault insurance carrier to pay Wilson’s outstanding medical bills. Lie succeeded in obtaining funds and paid Wilson’s medical bills with them.
 

 The record indicates that the $2981.06 escrowed from the settlement proceeds to pay the no-fault lien was never paid to the no-fault carrier. The $3854.17 escrowed from the settlement proceeds to cover Wilson’s outstanding bills was never used to pay medical providers. The record further reveals that Parlato collected an additional $3748.18 from the no-fault carrier.
 
 *352
 
 After all of Wilson’s medical bills were paid, $10,584.24, (the original escrow amount of $6836.06 and the additional amount of $3748.18) remained in the plaintiffs clients’ funds account attributable to the Wilson case.
 

 In August, 1989, the plaintiff withdrew from his clients’ funds account to his firm’s order a check for $6753.76 for services allegedly rendered by Parlato following settlement of the case. The balance of the $10,584.24, or $3830.48, was disbursed to Wilson in two separate checks on September 25, 1991 ($1666.67) and on September 25, 1992 ($2163.81).
 

 The plaintiff testified at the hearing that Parlato was the only one working on the Wilson case and that he charged Wilson for his after settlement services at the rate of $125 per hour. The plaintiff supplied her with an itemized bill totaling $6753.76. He could not, however, produce a copy of that bill or a record of the hours Parlato purportedly spent.
 

 Parlato testified that when the firm was experiencing a cash flow problem in 1989, he was presented by the firm bookkeeper with a clients’ funds check to pay additional legal fees for his services on the Wilson case. He refused to sign it. Parlato also denied submitting time records totaling $6753.76, for work done after settlement on the Wilson file. The reviewing committee found Parlato’s testimony on this point “credible.”
 

 The plaintiff submitted affidavits from Wilson and her husband stating that they were satisfied with their representation by the plaintiff’s firm and with the fee charged.
 

 Based on those facts, the reviewing committee stated in its proposed decision adopted by the statewide grievance committee that “the $10,584.24 remaining in the [plaintiff’s] trustee account following the payment of Mrs. Wilson’s outstanding medical bills belonged either
 
 *353
 
 to the no-fault carrier in payment of its hen or to the client, if the carrier waived its lien. We do not find any evidence in the record to support the [plaintiffs] position that $6,753.76 belonged to the firm for legal services rendered on the Wilson case by Attorney Parlato.”
 

 Accordingly, the reviewing committee concluded that the plaintiff violated rule 1.15 (b) of the Rules of Professional Conduct by failing to safeguard funds of a client or of a third party.
 

 Rule 1.15 (b) of the Rules of Professional Conduct provides: “Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.”
 

 Sections 27N (d) and (f) of the Practice Book provide that an appeal to the Superior Court of a decision by the statewide grievance committee reprimanding an attorney shall be “confined to the record” and that “the court shall not substitute its judgment for that of the statewide grievance committee as to weight of the evidence on questions of fact.” The role of the court is to determine “ ‘if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct.’ ”
 
 Weiss
 
 v.
 
 Statewide Grievance Committee,
 
 227 Conn. 802, 812, 633 A.2d 282 (1993), quoting
 
 Pinsky
 
 v.
 
 Statewide Grievance Committee,
 
 216 Conn. 228, 234, 578 A.2d 1075 (1990).
 

 
 *354
 
 The court must also determine that the statewide grievance committee met its burden of establishing a violation of the Rules of Professional Conduct by clear and convincing proof.
 
 Weiss
 
 v.
 
 Statewide Grievance Committee,
 
 supra, 227 Conn. 812.
 

 In the present case, this court concludes that the facts found by the reviewing committee and adopted by the statewide grievance committee are supported by the record and actually, were not even disputed by the plaintiff in this appeal. Those facts establish that the money held in the plaintiffs clients’ funds account belonged to either the no-fault carrier or to the client, and they did not belong to the plaintiff for the purported legal services of Parlato. The plaintiffs taking of those escrow funds for himself constituted, by clear and convincing proof, a violation of rule 1.15.
 

 The plaintiff contends that the fact that the reviewing committee’s proposed decision was not unanimous indicates a lack of clear and convincing proof. The common-law rule is that the decision of the majority of a collective body constitutes the decision of the body.
 
 Levinson
 
 v.
 
 Board of Chiropractic Examiners,
 
 211 Conn. 508, 539, 560 A.2d 403 (1989). The statewide grievance committee has adopted such a rule. Statewide Grievance Committee Rules of Procedure, IB and 7F (1995). As long as unanimity is not required, a finding by the majority of the reviewing committee of clear and convincing proof of an ethics violation is sufficient. Moreover, the adoption of the proposed decision of the reviewing committee by the fifteen member statewide grievance committee is the action being appealed from here and there is no indication in the record whether that adoption was by a split vote.
 

 The plaintiff raises the question that since the client was satisfied and the no-fault carrier made no claim, what standing did a former dismissed associate have to file a complaint? General Statutes § 51-90e and Practice
 
 *355
 
 Book § 27F (a) provide that any person or a grievance panel on its own motion may file a written complaint against an attorney alleging misconduct. Thus, the complaint filed here by an associate of the plaintiffs firm was not only proper but possibly even mandated by rule 8.3 of the Rules of Professional Conduct.
 

 Finally, the plaintiff, noting again the satisfaction of his client and the absence of a claim by the no-fault carrier, questions to whom he violated an ethical duty? The answer is contained in the preamble to the Rules of Professional Conduct: “A lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice.” The purpose of the grievance procedure established by Practice Book § 27A et seq., is to assure that attorneys practicing in this state meet the responsibilities of their several capacities set forth in the preamble and comply with the Rules of Professional Conduct. The ethical duty the plaintiff owed was to his clients (even if they did not complain), to the legal profession, to the courts, and to the people of the state of Connecticut.
 

 A reprimand is a serious disciplinary punishment. It remains forever on an attorney’s professional record. On inquiry, it is revealed to institutional clients deciding whether to retain the attorney and to selection committees evaluating the attorney for judicial or governmental offices. Having regard for the consequence of the decision of the statewide grievance committee, the court took this appeal very seriously.
 

 After careful deliberation, the court concludes that the record supported the facts found by the reviewing committee, those facts established by clear and convincing proof that the plaintiff violated rule 1.15 (b) of the Rules of Professional Conduct, and that the decision of the statewide grievance committee, adopting the findings of the reviewing committee and issuing the
 
 *356
 
 reprimand, was not arbitrary, capricious or an abuse of its discretion.
 

 Accordingly, the appeal is dismissed.