## F. WOODWARD LEWIS, JR. *v.* STATEWIDE GRIEVANCE COMMITTEE
### (15184)

Peters, C. J., and Borden, Berdon, Katz and Palmer, Js.

694

Argued October 27, 1995—decision released January 23, 1996

*David M. Reilly*, for the appellant (plaintiff).

*Elizabeth F. Collins*, assistant bar counsel, for the appellee (defendant).

PETERS, C. J. The principal issue in this case is the proper construction and application of rule 1.6 of the Rules of Professional Conduct[1] to the voluntary disclosure by an attorney of allegedly confidential information received by the attorney in the course of his professional representation. In response to the filing of a complaint by the grievants, Piyasena and Charika Hewawasam, the statewide grievance committee determined that the plaintiff, F. Woodward Lewis, Jr., an attorney at law, had improperly disclosed information relating to his representation of the grievants, his for-

---

[1] Rules of Professional Conduct 1.6 provides in relevant part: "Confidentiality of Information

"(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (a), (b), (c), and (d). . . .

"(c) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary to . . .

"(2) Rectify the consequence of a client's criminal or fraudulent act in the commission of which the lawyer's services had been used."

mer clients. Pursuant to Practice Book § 27N,[2] the plaintiff filed a petition for judicial review with the Superior Court, which dismissed the appeal. The plaintiff appealed from the judgment of that court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The underlying facts are undisputed. The grievants engaged the plaintiff to represent them with regard to a construction contract in which they had arranged, without the benefit of counsel, for the purchase of a new home to be built for them by Ricci Construction Company (Ricci Construction). After Ricci Construction had failed to complete the construction, the grievants discovered that Ricci Construction had obtained possession of their deposit of $19,100, despite a provision in the construction contract that indicated that the deposit should have been retained in escrow by the listing broker, Ennis Realty. On behalf of the grievants, the plaintiff filed a complaint in March, 1991, charging Ricci Construction with breach of contract and seeking the return of the deposit and the recovery of consequential damages.[3] Owing to a disagreement unrelated to the present controversy, the grievants terminated the plaintiff's services in June or July, 1991.

In August, 1991, represented by other counsel, the grievants filed with the Central Connecticut Board of Realtors, Inc. (realty board), a complaint against the listing broker and its agent for their failure to safeguard the deposit that should have been held in escrow under the terms of the construction contract. The realty board initially determined that the broker and its agent had

---

[2] Practice Book § 27N provides in relevant part: "Appeal from Decision of Statewide Grievance Committee To Reprimand

"(a) A respondent may appeal to the superior court a decision by the statewide grievance committee reprimanding the respondent."

[3] The record does not indicate how that lawsuit was resolved.

acted improperly, but granted their request for a rehearing to be held in March, 1992.

Prior to the rehearing before the realty board, a representative of the listing broker contacted the plaintiff regarding the plaintiff's prior representation of the grievants. In a letter to the representative, dated March 17, 1992, the plaintiff replied, stating: "During the course of my representation of Mr. and Mrs. Hewawasam on the contract for the purchase of Lot #2, Williams Road, Wallingford, Connecticut, neither Mr. or Mrs. Hewawasam ever mentioned that the $19,100.00 should be kept in escrow by the realty company. The facts given to me were that the check was made out to Ricci Construction Company and paid directly to it." This letter was the basis for the grievance complaint filed against the plaintiff.[4]

The plaintiff contested the grievants' complaint. Although a grievance panel[5] found that the complaint was not supported by probable cause, the statewide grievance committee did find probable cause that the plaintiff had engaged in professional misconduct, and referred the matter to a reviewing committee. The reviewing committee, in turn, issued a proposed decision in which it found that the plaintiff had engaged in misconduct under rule 1.6 and recommended a reprimand. The statewide grievance committee adopted the reviewing committee's proposed decision in its entirety, and issued a reprimand against the plaintiff for having violated rule 1.6.

---

[4] The realty board refused to permit the plaintiff's March 17, 1992 letter to be entered into evidence, and reaffirmed its decision against the listing broker and its agent.

[5] Each judicial district has one or more grievance panels. A grievance panel consists of two members of the bar and one layperson, all of whom are appointed by the Superior Court. General Statutes § 51-90b. A grievance panel investigates and determines whether probable cause exists for all complaints referred to it by the statewide grievance committee or the statewide bar counsel. General Statutes § 51-90f.

Pursuant to Practice Book § 27N, the plaintiff appealed to the trial court from the decision of the statewide grievance committee. In his appeal, the plaintiff claimed that: (1) disclosure of the information contained in his letter of March 17, 1992, did not violate rule 1.6 because the information was not confidential; (2) the disclosure was authorized by rule 1.6 because the plaintiff reasonably believed it was necessary to rectify criminal or fraudulent acts of the grievants in which the plaintiff's services had been used; (3) the statewide grievance committee applied the wrong standard of proof; and (4) the statewide grievance committee violated his due process rights. The trial court considered and rejected each of these claims, and therefore dismissed the plaintiff's appeal. In his appeal to this court, the plaintiff renews, in related form, the same claims that the trial court found unpersuasive. We agree with the trial court.

I

Our assessment of the merits of the plaintiff's claims must take place within the appropriate standard of review. A trial court's review of the decisions of the statewide grievance committee is limited. "Upon appeal, the court shall not substitute its judgment for that of the statewide grievance committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are: (1) In violation of constitutional, Practice Book or statutory provisions; (2) in excess of the authority of the committee; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or charac-

terized by abuse of discretion or clearly unwarranted exercise of discretion. . . ." Practice Book § 27N (f).

"Thus, in reviewing a decision of the statewide grievance committee to issue a reprimand, neither the trial court nor this court takes on the function of a fact finder. Rather, our role is limited to reviewing 'the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct.' *Pinsky* v. *Statewide Grievance Committee*, [216 Conn. 228, 234, 578 A.2d 1075 (1990)]. Additionally, in a grievance proceeding, the standard of proof applicable in determining whether an attorney has violated the [Rules] of Professional [Conduct][6] is clear and convincing evidence. *Statewide Grievance Committee* v. *Presnick*, [215 Conn. 162, 171–72, 575 A.2d 210 (1990)]. The burden is on the statewide grievance committee to establish the occurrence of an ethics violation by clear and convincing proof. Id." *Weiss* v. *Statewide Grievance Committee*, 227 Conn. 802, 812, 633 A.2d 282 (1993).

## II

The plaintiff presents two principal claims in this appeal relating to the application of rule 1.6 in the circumstances of his case. The plaintiff claims that disclosure was proper because: (1) the information disclosed in the letter was not confidential or (2) disclosure was privileged to prevent fraud. With respect to the latter claim, he maintains, furthermore, that the trial court overstepped its jurisdictional authority by substituting

[6] In light of the exhaustive discussion in *Statewide Grievance Committee* v. *Presnick*, 215 Conn. 162, 171–72, 575 A.2d 210 (1990), in which we determined that clear and convincing evidence is the appropriate standard under the *Code* of Professional Responsibility, and because the parties have not disputed this standard, we are not presented with an opportunity to determine whether a different standard would be required under the *Rules* of Professional Conduct.

its judgment for that of the statewide grievance commit-
tee and improperly failed to decide whether the state-
wide grievance committee had applied the proper
standard in determining that the plaintiff was not justi-
fied in believing that the grievants were committing
fraud. We address each claim in turn.

### A

The plaintiff first argues that the information that he
disclosed to the listing broker in the March 17, 1992
letter was not confidential within the meaning of rule
1.6. Rule 1.6 (a) of the Rules of Professional Conduct
provides that: "A lawyer shall not reveal information
relating to representation of a client unless the client
consents after consultation, except for disclosures that
are impliedly authorized in order to carry out the repre-
sentation, and except as stated in paragraphs (a), (b),
(c), and (d)." Concededly, the information contained
in the letter qualifies as "information relating to repre-
sentation of a client." The plaintiff maintains, however,
that disclosure of this information was "impliedly
authorized" because the grievants intended and
expected this information to be revealed to third par-
ties. We disagree.

Rule 1.6 authorizes an attorney to disclose client
information if such disclosure is "impliedly authorized
in order to carry out the representation . . . ." The rule
permits an attorney to exercise his or her professional
judgment to determine what disclosures are necessary
to the appropriate representation of the client. In the
service of appropriate representation, however, the rule
authorizes only necessary disclosures and only disclo-
sures to appropriate parties. See Rules of Professional
Conduct 1.6, comment; see generally 1 G. Hazard & W.
Hodes, The Law of Lawyering: A Handbook on The
Model Rules of Professional Conduct (2d Ed. 1990, 1994
Sup.) § 1.6:201-1, p. 158.3.

In the present context, rule 1.6 presumably authorized disclosure to third parties of all the information contained in the complaint against Ricci Construction that had been filed by the plaintiff on behalf of the grievants. See Rules of Professional Conduct 1.9 (b); see generally C. Wolfram, Modern Legal Ethics (1986) § 6.7.4, p. 302. Under the circumstances of this case, that authority did not encompass disclosure of information not contained in the complaint. The information disclosed in the letter to the listing broker exceeded the information the plaintiff was permitted to disclose because there was nothing in the complaint against Ricci Construction concerning whether the grievants ever had "mentioned that the $19,100.00 should be kept in escrow by the [listing broker]."[7] Such information, therefore, comes within the general rule of client-lawyer confidentiality. See Rules of Professional Conduct 1.6, comment.

## B

The plaintiff claims further that, even if the information that the plaintiff disclosed to the listing broker was confidential, he was nevertheless authorized to disclose the information under rule 1.6 (c) (2), which provides in relevant part: "A lawyer may reveal such information to the extent the lawyer reasonably believes necessary to . . . [r]ectify the consequence of a client's criminal or fraudulent act in the commission of which the law-

---

[7] The relevant portion of the complaint provides: "1. On October 31, 1990, the plaintiffs Piyasena and Charika Hewawasam and the defendants William Ricci and Ricci Construction Co., Inc. a/k/a Ricci Construction executed an agreement . . . whereby the defendants agreed to erect, in a workmanlike manner, a single family house on Lot 2, Williams Road, Wallingford, Connecticut, and to have it completed and ready for occupancy on or before February 12, 1991, for which the plaintiffs agreed to pay them $191,000, payable as follows: initial deposit of $19,100, mortgage financing of $141,000 and balance due at closing $30,900.

"2. The plaintiffs duly performed all the conditions of the contract on their part to date."

yer's services had been used." The plaintiff maintains that, by his disclosure, he was attempting to rectify fraud committed by the grievants either (1) in their complaint against the listing broker, or (2) in their complaint against Ricci Construction. He asserts that, in filing one or both of these complaints, the grievants must have been lying about their understanding of the escrow arrangement for their deposit. We are unpersuaded.

In order for an attorney to reveal a confidence for the purpose of preventing fraud under rule 1.6 (c) (2), the attorney must: (1) reasonably believe such revelation is necessary; (2) reveal the information only to the extent the attorney reasonably believes is necessary; (3) reasonably believe the client has or is committing a fraudulent act; and (4) reasonably believe the attorney's services had been used in committing that fraudulent act. See Rules of Professional Conduct 1.6. In each of the two scenarios proffered by the plaintiff as an explanation for his disclosure of the information in the letter, however, one or more of these elements is lacking.

First, the letter cannot be justified as a proper disclosure to rectify an alleged fraud against the listing broker because the grievants had not used the plaintiff's services to commit that alleged fraud. At most, the plaintiff might have indicated to the grievants why an action ordinarily could not be brought against the listing broker, thus indicating how they could fraudulently prosecute such an action. General legal advice in which an attorney explains, in good faith, why a client's case is unlikely to succeed or is destined to fail does not, however, constitute aiding a fraud if the client chooses to hire another attorney and attempts later to prosecute the case.[8] To hold otherwise would severely undermine

---

[8] We note that the plaintiff does not claim that he disclosed the allegedly fraudulent conduct in order to prevent being personally accused of aiding

the attorney-client relationship, which is based on the trust that confidences shall be kept except under extreme circumstances. It is a "fundamental principle in the client-lawyer relationship . . . that the lawyer maintain confidentiality of information relating to the representation. The client is thereby encouraged to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter." Rules of Professional Conduct 1.6, comment.

Second, the letter cannot be justified as a proper disclosure to rectify the fraud allegedly being committed against Ricci Construction. As the trial court concluded, the disclosure did not reveal information in a way that was reasonably necessary to correct the alleged fraud because it did not contradict any of the pleadings in the action against Ricci Construction. At most, the plaintiff was presented with an apparent inconsistency in the claim he had brought for the grievants against Ricci Construction and the claim subsequently presented by the grievants to the realty board. The letter, however, did not indicate that there were inappropriate allegations in the complaint filed against Ricci Construction. The letter indicated that the grievants had told the plaintiff that they had drawn a check payable to Ricci Construction, that the moneys had been paid directly to Ricci Construction and that the grievants had never told the plaintiff that the listing broker should have safeguarded the escrow. The information contained in this letter does not render fraudulent the allegations in the complaint against Ricci Construction, in which the grievants alleged only that they had agreed to pay a deposit and other moneys in exchange for the building of a home, that they had in fact paid the deposit, that the construction had not been

in the fraud. See Rules of Professional Conduct 1.6 (d); 1 G. Hazard & W. Hodes, supra, (1993 Sup.) § 1.6:110, pp. 144–45; C. Wolfram, supra, § 6.7.8, pp. 307–308.

completed and that they had lost their deposit. The letter, therefore, was not reasonably calculated to rectify any alleged fraud in the complaint against Ricci Construction.[9]

The plaintiff contends that, in rejecting his claims of a justified disclosure, the trial court improperly substituted its judgment for that of the reviewing committee on questions of fact. That contention is unavailing. In concluding that the plaintiff could not prevail with respect to the alleged fraud against the listing broker and its agent, the trial court *relied* on the factual finding of the reviewing committee that the plaintiff's services had not been used to commit that alleged fraud. The trial court, therefore, did not substitute its judgment for that of the reviewing committee. With respect to the alleged fraud against Ricci Construction, the trial court determined that the plaintiff "had no evidence of any fraud . . . *which it was proper for him to rectify* . . . ." (Emphasis added.) The plaintiff asserts that this legal conclusion is inconsistent with the determination of the statewide grievance committee that the plaintiff "did not have sufficient evidence" of fraud. We can find no inconsistency and conclude, therefore, contrary to the allegations of the plaintiff, that the trial court in no respect substituted its judgment for that of the reviewing committee on questions of fact.

Finally, on this issue, the plaintiff further contends that the trial court should have reviewed the propriety of the standard of review employed by the reviewing committee in its determination of whether the plaintiff had improperly concluded that his former clients were involved in fraudulent conduct. The reviewing committee required the plaintiff to have "clear evidence of

[9] We note that the method in which the plaintiff chose to attempt to rectify the alleged fraud against Ricci Construction was inappropriate for another reason as well: the letter was not addressed to Ricci Construction or to the tribunal before which the fraud allegedly occurred.

fraud before considering disclosure." The trial court, having addressed the claims of fraud and having found the disclosures, as a matter of law, to fall outside the compass of the disclosures that would be privileged by rule 1.6, properly concluded that it had no need to review the standard of proof applicable to this determination.

## III

The plaintiff's last claim is that the trial court improperly rejected his objections to the procedures followed by the statewide grievance committee in arriving at its decision to reprimand him. The plaintiff contends that he was deprived of due process of law because: (1) he did not have a hearing before a full reviewing committee, in violation of statutory and Practice Book authority; and (2) the member of the reviewing committee who cast the deciding vote against him had not attended the grievance hearings.[10] Like the trial court, we find neither of these contentions persuasive.

The following additional facts are relevant to this claim. After the statewide grievance committee had found probable cause that the plaintiff had violated rule 1.6, it referred the matter to a three member reviewing committee consisting of two attorneys, Daiga Osis and Stephen F. Donahue, and one layperson, Ralph Murray. Grievance hearings were subsequently noticed for November 18, 1992, December 9, 1992, and February 19, 1993. The two attorneys attended all three hearings. Murray attended none of the hearings, and resigned from the reviewing committee before reading the record

---

[10] The plaintiff also contends that the procedure followed by the statewide grievance committee violated his right to due process because, he argues, the layperson assigned to the reviewing committee decided, in effect, an issue of law. Because our examination of the record reveals that the plaintiff failed to raise this claim below, we decline to review the claim. Practice Book § 4185; see *Statewide Grievance Committee* v. *Whitney*, 227 Conn. 829, 845–46, 633 A.2d 296 (1993).

and casting a vote. Donahue recommended a dismissal of the grievance against the plaintiff, and Osis recommended a reprimand. Pursuant to rule 7F of its rules of procedure,[11] the statewide grievance committee then referred the record to another layperson, Caroline Wakefield, to review the entire record and vote on the matter.

On November 26, 1993, the reviewing committee issued a proposed decision that recommended, by a vote of two to one, a reprimand of the plaintiff. On December 16, 1993, the statewide grievance committee, with at least a quorum present, considered the full record of the grievance complaint and the proposed decision. With Osis, Donahue and Wakefield abstaining, the statewide grievance committee then voted unanimously to adopt the proposed decision to reprimand the plaintiff.

"Because a license to practice law is a vested property interest, an attorney subject to discipline is entitled to due process of law. *In re Ruffalo*, 390 U.S. 544, 551, 88 S. Ct. 1222, 20 L. Ed. 2d 117, reh. denied, 391 U.S. 961, 88 S. Ct. 1833, 20 L. Ed. 2d 874, modified on other grounds, 392 U.S. 919, 88 S. Ct. 2257, 20 L. Ed. 2d 1380 (1968); *Statewide Grievance Committee* v. *Botwick*, [226 Conn. 299, 306, 627 A.2d 901 (1993)]. Accordingly, [b]efore discipline may be imposed, an attorney is entitled to notice of the charges, a fair hearing and an appeal to court for a determination of whether he or she has been deprived of these rights in some substantial manner. *Statewide Grievance Committee* v. *Botwick*, supra,

---

[11] Rule 7F of the Rules of Procedure of the Statewide Grievance Committee provides: "All determinations of a reviewing committee shall be by an absolute majority vote and two members shall constitute a quorum. In the event of a tie vote, a member of the Statewide Grievance Committee shall be designated to review the entire record of the complaint and cast the deciding vote. All determinations of the Statewide Grievance Committee shall be by an absolute majority vote and seven members shall constitute a quorum."

308 . . . ." (Citation omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Shluger*, 230 Conn. 668, 675, 646 A.2d 781 (1994); see *Statewide Grievance Committee* v. *Rozbicki*, 219 Conn. 473, 484, 595 A.2d 819 (1991), cert. denied, 502 U.S. 1094, 112 S. Ct. 1170, 117 L. Ed. 2d 416 (1992); *Statewide Grievance Committee* v. *Presnick*, supra, 215 Conn. 169.

We agree with the trial court that the constituency of the reviewing committee did not violate the plaintiff's due process rights. The plaintiff claims that the statewide grievance committee violated General Statutes § 51-90g (a)[12] and Practice Book § 27J (a)[13] by conduct-

[12] General Statutes § 51-90g provides in relevant part: "Review of panel's determination by subcommittee or State-Wide Grievance Committee. (a) The State-Wide Grievance Committee may designate at least three members of the committee, including at least one-third who are not attorneys, to serve as a reviewing subcommittee for each determination made by a panel on a complaint. The committee shall regularly rotate membership on reviewing subcommittees and assignments of complaints from the various judicial districts. The State-Wide Grievance Committee or the subcommittee, if any, shall hold a hearing concerning the complaint if the panel determined that probable cause exists that the attorney is guilty of misconduct. If the grievance panel determined that probable cause does not exist that the attorney is guilty of misconduct, the committee or subcommittee shall review the determination of no probable cause, take evidence if it deems it appropriate and, if it determines that probable cause does exist that the attorney is guilty of misconduct, shall take the following action: (1) If the State-Wide Grievance Committee reviewed the determination of the grievance panel it shall hold a hearing concerning the complaint or assign the matter to a subcommittee to hold the hearing; or (2) if a subcommittee reviewed the determination of the grievance panel it shall hold a hearing concerning the complaint or refer the matter to the State-Wide Grievance Committee which shall assign it to another subcommittee to hold the hearing. An attorney who maintains his office for the practice of law in the same judicial district as the respondent may not sit on the reviewing subcommittee for that case."

[13] Practice Book § 27J provides in relevant part: "Action by Statewide Grievance Committee or Reviewing Committee

"(a) Upon receipt of the record from a grievance panel, the statewide grievance committee may assign the case to a reviewing committee which shall consist of at least three members of the statewide grievance committee, at least one third of whom are not attorneys. The statewide grievance committee may, in its discretion, reassign the case to a different reviewing committee. The committee shall regularly rotate membership on reviewing

ing hearings before a reviewing committee with fewer than three members present. We find no support for the plaintiff's argument in either of these provisions. Both General Statutes § 51-90g (a) and Practice Book § 27J (a) require that a reviewing committee consist of at least three members of the statewide grievance committee. Contrary to the plaintiff's claim, however, neither requires that all the designated members of a reviewing committee attend grievance hearings. In fact, statewide grievance committee rule of procedure 7F establishes that, once empowered to act, a quorum of the reviewing committee can act for the whole, although a majority vote is needed for a proposed decision. Reading into these provisions a requirement that all designated members of a reviewing committee must attend grievance hearings is contrary to analogous precedent. *Pet* v. *Dept. of Health Services*, 228 Conn. 651, 672, 638 A.2d 6 (1994). The plaintiff has not articulated any persuasive constitutional or prudential reason for interpolating such a requirement.[14]

We also agree with the trial court that the plaintiff's due process rights were not violated even though the layperson on the reviewing committee who ultimately voted for the plaintiff's reprimand did not personally attend the grievance hearings. The principle that members of an administrative agency may vote after reading the record is well recognized; id. (sanctioning participation in decision by committee members based solely

committees and assignments of complaints from the various grievance panels. An attorney who maintains an office for the practice of law in the same judicial district as the respondent may not sit on the reviewing committee for that case."

[14] We also note that the decision of the reviewing committee was reviewed by the full statewide grievance committee and that the plaintiff had a fourteen day period in which to comment on the reviewing committee's proposed decision before the proposed decision was presented to the full statewide grievance committee. The plaintiff has not challenged the fairness of the proceedings before the full statewide grievance committee.

upon their reading of record); and is embodied in state-wide grievance committee rule of procedure 7F.[15]

The plaintiff attempts to distinguish *Pet* by arguing that, in this case, credibility was a central issue in the decision of the reviewing committee, and that the member who did not attend the grievance hearings had no opportunity to assess the credibility of the witnesses who testified. The trial court correctly observed, however, that most of the relevant facts were undisputed and credibility was not a major factor in the reviewing committee's decision. Furthermore, even if the plaintiff's credibility had been at issue, due process requires no more than the presence of two of the three reviewing committee members at the grievance hearings when, as in the present circumstances, the third member read the full record and transcript, and all proceedings were conducted in full compliance with the applicable procedural rules.

The judgment is affirmed.

In this opinion BORDEN, KATZ and PALMER, Js., concurred.

BERDON, J., concurring. If a witness' credibility may have *any* impact upon the outcome of a case, the trier of fact must determine that individual's credibility in a proper manner through personal observation of the witness. I am still unable to appreciate my colleagues' claim that a fact finder can determine an individual's credibility based upon a reading of a cold transcript.

In this case, one of the three members of the reviewing committee, Caroline Wakefield, never attended a hearing, but merely read the record in order to make her determination. I can only assume the majority believes that administrative fact finders are clairvoy-

[15] See footnote 11.

ant. What makes this case so egregious is that the two individuals who were present during the hearings and heard the live testimony of the witnesses disagreed as to whether the plaintiff violated the Rules of Professional Responsibility. It was Wakefield who cast the deciding vote to recommend that the plaintiff be reprimanded.

Relying on *Pet* v. *Dept. of Health Services*, 228 Conn. 651, 672, 638 A.2d 6 (1994), the majority concludes that "[t]he principle that members of an administrative agency may vote after reading the record is well recognized." Such a conclusion is offensive to due process. Just as it would be absurd to conclude that a trial judge need only read a transcript of a witness' testimony when the witness' credibility is in issue, it is equally so with respect to an administrative hearing. Similarly, under the majority's analysis, a member of the judicial review board need not attend a hearing before voting to sanction a judge, despite the fact that credibility is in issue. This can not be. Important issues are frequently decided in adjudicatory administrative hearings. In this case, for example, the administrative process involved the reprimand of an attorney that will stain his professional reputation. Therefore, my dissent in *Pet* has equal application in this case.

"Credibility must be assessed, as any trial judge will attest, not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. *State* v. *Henning*, 220 Conn. 417, 420, 599 A.2d 1065 (1991). An appellate court must defer to the trier of fact's assessment of credibility because '[i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom.' (Internal quotation marks omitted.) *In re Juvenile Appeal (82-AB)*, 188 Conn. 557, 561, 452 A.2d 113 (1982). As a practical matter, it is inappropriate to

assess credibility without having watched a witness testify, because demeanor, conduct and other factors are 'not fully reflected in the cold, printed record.' *Kaplan* v. *Kaplan*, 186 Conn. 387, 391, 441 A.2d 629 (1982).

"As Justice Cardozo recognized in *Smith* v. *New York*, 214 N.Y. 140, 144, 108 N.E. 214 (1915), the principle that credibility must be judged firsthand applies equally to administrative and judicial proceedings: 'The Board is not in the strict sense a court . . . but its functions are judicial, and the requirement that witnesses shall be seen and heard by the judicial officer who is to weigh their testimony has been proved by experience to be a means so important for the ascertainment of truth as to entitle us to assume that it will not be lightly abandoned.' (Citation omitted.) Similarly, in holding that a member of the Philadelphia city council would 'be disqualified from voting on any of the charges [against a local official] that is supported by . . . evidence introduced when he was not present'; *Marshall Impeachment Case*, 363 Pa. 326, 343, 69 A.2d 619 (1949); the Supreme Court of Pennsylvania stressed the importance of observing testimony firsthand: 'Not only what witnesses say but their manner and demeanor while testifying are important factors in passing on their credibility. The determination of whether or not a witness is worthy of belief depends upon the impression he makes when answering questions put to him on direct and cross-examination. It is possible, if not probable, that there will be conflicts or contradictions in the testimony, and the acceptance of the testimony of one witness and the rejection of the testimony of another witness necessitate that most careful attention be given each witness from the moment he is sworn or affirmed until his testimony is concluded.' Id., 342." *Pet* v. *Dept. of Health Services*, supra, 228 Conn. 695–96 (*Berdon, J.*, dissenting).

For the above reasons, rule 7F[1] of the Rules of Procedure of the State Grievance Committee, which allows a fact finder to cast a tie-breaking vote based upon a mere reading of the record, is constitutionally deficient. I concur in the result, however, because the plaintiff never objected to this procedure before the grievance committee.[2] I agree with the remainder of the majority opinion.

---

[1] See footnote 11 of the majority opinion.

[2] General Statutes § 51-90h (a) provides: "Within fourteen days of the issuance to the parties of the proposed decision, the complainant and respondent may submit to the State-Wide Grievance Committee a statement in support of, or in opposition to, the proposed decision. The State-Wide Grievance Committee may, in its discretion, request oral argument."