## PHILIP M. BLOCK *v.* STATEWIDE GRIEVANCE COMMITTEE

| Superior Court | Judicial District of New Britain | File No. CV990495866S |

Memorandum filed November 3, 2000

*Philip M. Block,* pro se, the plaintiff.

*Cathy A. Dowd,* assistant bar counsel, for the defendant.

HON. ROBERT SATTER, JUDGE TRIAL REFEREE. This is an appeal from a decision of the statewide grievance committee (statewide committee) issuing a reprimand of the plaintiff, attorney Philip M. Block, for violating the following three Rules of Professional Conduct: First, rule 1.1, by failing to possess the requisite knowledge and skill; second, rule 1.5 (b), by failing to provide a written retainer agreement to a client; and third, rule 1.16 (d), by failing to return a file to the client within a reasonable time after termination.

The procedural history of this matter is as follows. On May 16, 1997, Betty Lou Emerson, a former client of the plaintiff, filed a grievance with the statewide committee that was forwarded to the grievance panel for the judicial district of Hartford-New Britain, geographical areas thirteen and fourteen (local panel). Emerson subsequently supplemented her complaint, and the plaintiff submitted a response to it. The local panel, based on the material submitted to it, but without a hearing, found no probable cause that the plaintiff had violated the Rules of Professional Conduct and

forwarded that determination to the statewide committee on August 13, 1997. Emerson objected in writing to the local panel's determination. The statewide committee convened a reviewing committee and, on October 23, 1997, that reviewing committee found that probable cause existed that the plaintiff had violated rules 1.5 (b), 1.1, 1.3, 1.2 (a) and 1.16 (d) of the Rules of Professional Conduct. On May 28, 1998, Emerson and the plaintiff were notified that a hearing would be held before a second reviewing committee. On July 9, 1998, the hearing on the complaint commenced before that second reviewing committee, which consisted of attorneys Vincent D'Angelo and Anne Hoyt. The public member of the second reviewing committee, Mary Smith, neither attended the hearing nor participated in the decision. At the hearing, Emerson testified briefly and submitted exhibits, and the plaintiff also testified and submitted exhibits. On March 24, 1999, the second reviewing committee, consisting of the aforementioned two attorneys, issued its proposed decision finding that the plaintiff violated rules 1.5 (b), 1.1 and 1.16 (d) of the Rules of Professional Conduct and recommended that the statewide committee reprimand the plaintiff. It also recommended that the statewide committee order the plaintiff to return to Emerson her entire file within sixty days of the statewide committee's final decision. On April 16, 1999, the statewide committee adopted the proposed decision of the second reviewing committee, issued a reprimand against the plaintiff, and ordered him to return Emerson's file to her before June 15, 1999.

The facts upon which the statewide committee rendered its decision are as follows. On September 24, 1993, Emerson authorized the plaintiff to investigate the possibility of bringing suit to enjoin her neighbors from using pesticides on their lawns that adversely affected her health. Emerson paid the plaintiff an initial cash retainer of $250 at that time. From October, 1993,

through March, 1994, the plaintiff undertook to investigate Emerson's medical condition, talk to her physicians, and research possible causes of action. On April 22, 1994, he determined she had a cause of action and proposed a formal retainer agreement, agreed to by Emerson, to initiate an action on her behalf. The plaintiff requested a $2000 retainer toward his hourly fee of $175. Emerson made periodic payments toward the retainer between June, 1994, and May, 1996.

In September, 1995, the plaintiff drafted an application for prejudgment remedy and temporary injunction and submitted it to Emerson for her review. In April, 1996, the plaintiff filed the prejudgment remedy application and a verified complaint, signed by Emerson, seeking damages and a temporary and permanent injunction against the use of lawn pesticides by Emerson's neighbors. The plaintiff did not file an affidavit with the prejudgment remedy application, as required by General Statutes § 52-278c (2), because he believed that the verified complaint was sufficient to satisfy the affidavit requirement.

A hearing on the prejudgment remedy application was set for May 13, 1996. Emerson could not appear because of her disability. At that hearing, one of the defendants in the pesticide suit filed a motion to dismiss the prejudgment remedy application on the ground that the plaintiff had failed to file an affidavit with the application. The plaintiff telephoned Emerson after the hearing and advised her about the motion to dismiss, recommended that he not pursue the prejudgment remedy application and only move forward on the complaint for injunctive relief. Emerson, having lost confidence in the plaintiff, wrote to him on May 14, 1996, discharged him, authorized him to withdraw his appearance, requested him to present an accounting of fees paid and expenses incurred, and said, "I will be acting pro se until other arrangements can be made."

The plaintiff submitted a bill for his services for 21.2 hours at the rate of $175 per hour, totalling $3710. Of that sum, the plaintiff, for the first time, billed Emerson for 8.5 hours of services rendered between October, 1993, and March, 1994, the period before the retainer agreement was entered into.

On October 19, 1996, the court granted the defendant's motion to dismiss the prejudgment remedy application in the pesticide case on the ground that the plaintiff failed to provide an affidavit. The decision, however, did not become effective until March 27, 1997, when the parties were notified of the court's decision. In May, 1997, a year after the plaintiff had withdrawn his appearance and when Emerson was acting on her own behalf as a pro se, the defendants, in that case, moved to dismiss the underlying complaint on two grounds: First, that the writ of summons and complaint was not served after the prejudgment remedy application was denied; and, second, because the complaint lacked a certificate of financial responsibility, as required by statute. The court granted that motion to dismiss on October 28, 1997, on those grounds.

At the time Emerson discharged the plaintiff, she requested her file back. The plaintiff promptly returned all the pleadings in the case but did not return copies of magazine articles, news items and other documents, of which Emerson had the originals. He did not refuse to turn them over to Emerson, because she did not pay his bill. Rather, he simply did not bundle up the material and mail it to her. There is no evidence he would not have given the balance of the file to Emerson if she had appeared at his office for it.

The reviewing committee concluded that the plaintiff engaged in ethical misconduct in connection with the representation of Emerson in the following manner: First, the plaintiff violated rule 1.5 (b) of the Rules of

Professional Conduct by undertaking to research the possibility of her having a cause of action in September, 1993, and not obtaining a written retainer agreement until April, 1994; second, the plaintiff violated rule 1.1 of the Rules of Professional Conduct by filing a prejudgment remedy application with a verified complaint but not an affidavit, which led to the dismissal of the prejudgment remedy application, and eventually, because Emerson did not serve the defendants with a summons and complaint in the pesticide action, after the denial of the prejudgment remedy, led to dismissal of the underlying injunction complaint; third, the plaintiff violated rule 1.16 (d) of the Rules of Professional Conduct by failing to return Emerson her file within a reasonable time after termination of his representation.

Based upon these determinations, the reviewing committee recommended the plaintiff be reprimanded, and that recommendation was adopted by the statewide committee.

At the outset of the hearing before this court, this court raised what it considered a jurisdictional issue and gave the parties the opportunity to submit postargument briefs on it. The issue was whether the reviewing committee of the statewide committee that heard the complaint in the present case and recommended disciplinary action to the statewide committee, was properly constituted. The court did so because General Statutes § 51-90g (a) and Practice Book § 2-35 provide that a reviewing committee authorized to hold a hearing and submit a proposed decision to the statewide committee shall consist of at least three members, including, in the words of the statute, "at least one-third who are not attorneys"; General Statutes § 51-90g (a); and the record clearly reveals the reviewing committee members in the present case consisted of two attorneys and no laypersons.

A number of Superior Court decisions have upheld decisions of reviewing committees of the statewide

committee proceeding without a lay member. *Statewide Grievance Committee* v. *Egbarin,* Superior Court, judicial district of Hartford, Docket No. CV980585474S (June 22, 1999) *(Berger, J.)*; *Braunstein* v. *Statewide Grievance Committee,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV950548149S (October 24, 1997) (20 Conn. L. Rptr. 467) *(McWeeny, J.)*; *Statewide Grievance Committee* v. *Tyler,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV970568610 (September 12, 1997) *(Lavine, J.)*; *Cramer* v. *Statewide Grievance Committee,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV960562467 (January 31, 1997) *(McWeeny, J.)*; *Hanson* v. *Statewide Grievance Committee,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV960560411 (January 30, 1997) *(McWeeny, J.)*. All of these cases invoke rule 7F of the rules of procedure of the statewide committee to the effect that a majority of a committee shall constitute a quorum, and rely upon two Supreme Court decisions: *Lewis* v. *Statewide Grievance Committee,* 235 Conn. 693, 669 A.2d 1202 (1996); and *Levinson* v. *Board of Chiropractic Examiners,* 211 Conn. 508, 560 A.2d 403 (1989).

In *Lewis,* the reviewing committee recommending a reprimand of an attorney consisted of two attorneys and one layperson. The two attorneys attended all the hearings; the layperson attended none of the hearings and resigned from the committee before reading the record and casting a vote. *Lewis* v. *Statewide Grievance Committee,* supra, 235 Conn. 704–705. The two attorneys split as to recommending a reprimand. The matter was referred to another layperson, who reviewed the record and eventually voted to reprimand the attorney. Id., 705

The plaintiff in *Lewis* claimed that he was deprived of due process because: (1) he did not have a hearing before a full reviewing committee of three members in

violation of § 51-90g (a) and Practice Book § 2-35; and (2) the member of the reviewing committee who cast the deciding vote against him had not attended the grievance hearings. Id., 704. As to the first claim, the Supreme Court held that the fact that the reviewing committee consisted of fewer than three members did not violate the statute and the Practice Book provision. Id., 706. It stated: "Contrary to the plaintiff's claim, however, neither [§ 51-90g (a) and Practice Book § 2-35] requires that all designated members of a reviewing committee attend grievance hearings. In fact, statewide grievance committee rule of procedure 7F establishes that, once empowered to act, a quorum of the reviewing committee can act for the whole, although a majority vote is needed for a proposed decision." Id., 707.

The court further held that the layperson who voted did not personally have to attend the grievance hearings and could vote after reading the record. Id., 707–708.

Thus, *Lewis* did not deal with the requirement of § 51-90g (a) and Practice Book § 2-35 that a three member reviewing committee have at least one lay member. More significantly, *Lewis* is not dispositive of the issue of whether or not a layperson must participate in the decision of the reviewing committee because in *Lewis*, the layperson, in fact, did participate.

In *Levinson*, a chiropractor was suspended by a board of chiropractic examiners consisting of two practicing chiropractors and no public member. The plaintiff in *Levinson* claimed a violation of General Statutes § 19a-8, which stated, at that time, that not less than one third of the members of any of the boards listed in General Statutes § 19a-14, including the chiropractic examining board, shall be public members. In rejecting that claim, the court applied the common-law rule that "[a] board may act as long as there exists a quorum equal to a majority of all the actual members of the board." *Levinson* v. *Board of Chiropractic Examiners*,

supra, 211 Conn. 539. The court noted that "[t]here is no provision in chapter 372 of the General Statutes, which creates the board of chiropractic examiners, that abrogates the common law rule." Id.

The court cited in support of the common-law rule as to a quorum, *Lee* v. *Board of Education*, 181 Conn. 69, 83–84, 434 A.2d 333 (1980), and *Strain* v. *Mims*, 123 Conn. 275, 281, 193 A. 754 (1937). *Lee* involved a local board of education and *Strain* a local zoning commission. The laws creating neither board nor commission require categories of members, so those cases are distinguishable from the facts in *Levinson*, where § 19a-8 requires professional and lay members on the chiropractic examining board.

The *Levinson* court noted that the public member slot on the chiropractic examining board had not been filled, and cited *U.S. Vision, Inc.* v. *Board of Examiners for Opticians*, 15 Conn. App. 205, 213, 545 A.2d 565 (1988), for the proposition that a vacancy on a board does not deprive the board of the statutory authority to act. *Levinson* differs from the present case because here, the lay member of the reviewing committee had been appointed and was serving, but declined to participate.

The most significant aspect of *Levinson* is that it deals with the *number* of board members qualified to act, and not with the *composition* of the board members qualified to act. A law requiring professional and public members on a professional board does not abrogate, as the *Levinson* court asserts, the common-law rule as to what constitutes a quorum on a homogeneous board. The common-law rule as to a quorum of a board, relied upon by the *Levinson* court, and rule 7F of the rules of procedure of the statewide committee as to a quorum of a reviewing committee, relied upon by the *Lewis* court, are clearly superseded by a statutory mandate

that there be a prerequisite percentage of nonprofessional members on these boards and committees.

It may be noted that General Statutes § 20-25, providing for professional and public members on the state board of chiropractic examiners, was amended by No. 98-143, § 5, of the 1998 Public Acts to provide: "A majority of the members of the board shall constitute a quorum." Clearly that amendment permits a majority of the board to act, regardless of the composition of the acting board. Thus, the legislature knows how to resolve the matter of a quorum on a composite board. It has chosen not to do so in § 51-90g (a).

Rather than relying on *Lewis* and *Levinson*, this court finds *DuBaldo* v. *Dept. of Consumer Protection*, 209 Conn. 719, 552 A.2d 813 (1989), more directly on point concerning the issue of composition of board members. In *DuBaldo*, an electrical work examining board suspended the license of an electrical contractor. At the time of the hearing, General Statutes (Rev. to 1983) § 20-331 required that the examining board consist of seven members, at least "two of whom shall be unlimited journeymen, engaged in and licensed for such occupation . . . ." The court found that two journeymen on the board were union officials and not engaged in electrical work, as required by § 20-331. The court, therefore, held that "it is clear that the board was not properly constituted. Since neither man was 'engaged in' the occupation of electrical work the board's decision to suspend the plaintiff's license was without statutory authority." *DuBaldo* v. *Dept. of Consumer Protection*, supra, 723.

*DuBaldo* implicitly effectuates the mandate that professional boards be constituted as required by statute. In 1977, the legislature passed a sweeping act that reorganized state executive departments, provided a mechanism for termination of agencies, boards, and commissions that could not justify their continuance,

and, relevant here, provided for public members on professional boards and commissions. Public Acts 1977, No. 77-614; see, e.g., General Statutes § 19a-8.

The purpose of the latter provision was to achieve, as then State Senator Joseph I. Lieberman remarked on the Senate floor, "accountability and openness and public interest [in] the placement of members of the public on state regulatory bodies. That, in my opinion, is a small revolution that is accomplished by this bill." 20 S. Proc., Pt. 7, 1977 Sess., p. 2683.

Section 51-90g (a), was amended in 1986 to provide for three member reviewing committees, "at least one-third who are not attorneys," to hear complaints against attorneys and render a proposed decision to the state-wide committee. The legislative history of the law is slight because it was adopted on the consent calendar in the Senate, and with no debate on that provision in the House. See 29 S. Proc., Pt. 9, 1986 Sess., pp. 3126–29, 3178–79; 29 H.R. Proc., Pt. 12, 1986 Sess., pp. 4196–4203, 4460–70. Clearly, the statutory composition of the reviewing committees of the statewide committee was designated to serve the same purposes of accountability and openness as the 1977 government reorganization act for other regulatory boards. When reviewing committees consist solely of lawyers, the public perception can be that lawyers are protecting themselves. Participation by a nonattorney belies such a perception and, thus, enhances public confidence in disciplinary decisions of the statewide committee.

The statewide committee argues that the requirement in § 51-90g (a) that the reviewing committee consists of "at least one-third who are not attorneys" is directory, and not mandatory. In support of this, the statewide committee cites *Doe* v. *Statewide Grievance Committee*, 240 Conn. 671, 694 A.2d 1218 (1997). In *Doe*, the Supreme Court construed the provision in § 51-90g (c),

that a statewide grievance subcommittee render its proposed decision ninety days from the date of a local grievance panel's determination of probable cause, to be directory rather than mandatory. Id., 685. The decision is consistent with the principle that time restraints are sometimes designed to "secure order, system and dispatch in the proceedings"; *Jones* v. *Mansfield Training School*, 220 Conn. 721, 727, 601 A.2d 507 (1992); and are not matters of substance. Here, however, the statutory provision that a reviewing committee be composed of at least one third who are not attorneys goes to the committee's very authority to act, may be jurisdictional in nature, and must be construed as mandatory.

The statewide committee further argues that the reviewing committee only made a recommendation to the statewide committee and the statewide committee voted the reprimand of the plaintiff. Not even the Supreme Court in *Lewis* sustained the action of the reviewing committee of the statewide committee on that basis, nor do any of the Superior Court decisions previously cited. Such an interpretation would render superfluous the provisions of § 51-90g (a) relating to the composition of the reviewing committee and, thus, counter the well established canon of statutory interpretation that the legislature has a purpose for each provision of a statute and care must be taken to effectuate all of them. *General Motors Corp.* v. *Dohmann*, 247 Conn. 274, 287, 722 A.2d 1205 (1998).

Thus, this court concludes the reviewing committee hearing the plaintiff's case was improperly constituted when it acted without a public member. When the *DuBaldo* court reached a similar conclusion, it neither dismissed the case for lack of jurisdiction, nor sustained the appeal, but remanded the case to the electrical worker examining board "to be proceeded with according to this opinion." *DuBaldo* v. *Dept. of Consumer Protection*, supra, 209 Conn. 723. This court

interprets that phrase to mean that the Supreme Court directed that the electrical work board should act when it was properly constituted. Likewise, here, this court remands the present case to the statewide committee for the reviewing committee to act on the complaint against the plaintiff by two attorneys and one public member, as required by § 51-90g (a) and Practice Book § 2-35.