[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The plaintiff, Matthew B. Beizer, appeals from the decision of the defendant, statewide grievance committee, reprimanding him for engaging in conduct involving misrepresentation and engaging in conduct that is prejudicial to the administration of justice, in violation of rules 8.4 (3) and 8.4(4) of the Rules of Professional Conduct. The other defendant is Wendy John, the complainant to the statewide grievance committee.
The court dismisses the appeal.
 I
The administrative record in this case discloses the following facts. On October 13, 1994, John allegedly injured her neck, back, and knee while employed at the University of Connecticut Medical Center. Represented by Attorney Francis Cipriano, John filed a workers' compensation claim. The plaintiff, an Assistant Attorney General, represented the state in defending against this claim. (Return of Record ("ROR"), p. 1474.)[1]
On October 28, 1996, Cipriano and the plaintiff appeared for a preformal hearing before a workers' compensation commissioner ("commissioner"). The plaintiff requested that Cipriano provide a medical authorization signed by John so that the plaintiff could obtain John's medical records. On November 18, 1996, Cipriano mailed the plaintiff a signed medical authorization with the following cover letter:
Dear Attorney Beizer:
 Following our faxing our letter to you earlier today, we received back by fax a copy of Wendy John's medical authorization. As agreed to at the Pre-Formal on 10/28/96, let this letter confirm that you will send me copies of any medicals received in addition to what I have previously forwarded to you by way of this authorization.
If you have any problem with this, please call me. CT Page 7415
Sincerely,
/s/ Francis P. Cipriano
The plaintiff never contacted Cipriano to discuss or dispute the terms of this letter. (ROR, pp. 1474-75.)
The schedule of the compensation case called for a formal hearing to take place on July 9, 1997. Prior to that time, the plaintiff used John's authorization to obtain records from Holyoke Hospital in Massachusetts and from an independent medical examiner. The records revealed John to have incurred similar low back and knee injuries in a work-related accident in Massachusetts in July, 1994. Without mentioning the November 18 letter, the plaintiff asked his supervisor whether to disclose the Massachusetts records to Cipriano if the plaintiff intended only to use the records for impeachment purposes. The plaintiffs supervisor advised against disclosure. In response to two June, 1997 letters from Cipriano requesting information regarding the evidence to be presented at the July 9 hearing, the plaintiff replied in general terms without mentioning the Massachusetts records. At no point before the July 9 hearing did the plaintiff disclose the records to Cipriano. (ROR, pp. 1475-76.)
At the July 9 hearing, the plaintiff attempted to cross examine John based on information contained in the Holyoke Hospital records. Cipriano objected on the ground that the plaintiff should have provided the records to him based on their agreement. After offering Cipriano an opportunity to review the records, the commissioner allowed the information and the records to come into evidence. The commissioner ultimately dismissed the workers' compensation claim. (ROR, pp. 1476-77.)
Cipriano appealed to the workers' compensation review board ("the board"). On March 1, 1999, the board reversed the commissioner and remanded for a new hearing. The board found that the plaintiff had introduced medical reports "which [the plaint if] had promised to provideto the claimant's counsel." (Emphasis in original.) (ROR, p. 555.) The board concluded that the plaintiffs failure to disclose these documents denied John "a full and fair opportunity to present her case and to respond to the employer's evidence. . . ." (ROR, p. 555.)
The state appealed this decision to the Appellate Court. The court dismissed the appeal on procedural grounds on September 22, 1999. (ROR, pp. 608, 1477.) In the state's Appellate Court brief, the state for the first time explicitly refuted the existence of an agreement to provide Cipriano medical records. (ROR, p. 573 n. 2.) Neither the plaintiff nor CT Page 7416 any other counsel for the state had denied the existence of the agreement at the formal hearing before the commissioner or in any of the written pleadings filed by the state with either the commissioner or the board. (ROR, p. 1478.)
Meanwhile, on July 14, 1999, John filed a grievance complaint against the plaintiff. A grievance panel of the Hartford-New Britain judicial district and an initial reviewing committee found probable cause that the plaintiff had engaged in misconduct on several grounds. A different reviewing committee conducted hearings on the case on May 11, 2000, September 14, 2000, and November 9, 2000. On July 20, 2001, the reviewing committee issued a decision reprimanding the plaintiff on the grounds that he had violated rules 8.4(3) and 8.4(4) of the Rules of Professional Conduct.[2] (ROR, pp. 1471, 1478-79.) The plaintiff requested review by the statewide grievance committee. On September 21, 2001, the statewide grievance committee affirmed the decision of the reviewing committee. (ROR, pp. 1518-19.)
The plaintiff now appeals to this court.
 II
Although the statewide grievance committee is not an administrative agency, judicial review of its conclusions is similar to the review afforded an administrative agency decision. See Weiss v. StatewideGrievance Committee, 227 Conn. 802, 811, 633 A.2d 282 (1993). The following standards govern judicial review of decisions of the Statewide Grievance Committee:
Upon appeal, the court shall not substitute its judgment for that of the statewide grievance committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are: (1) In violation of constitutional, Practice Book or statutory provisions; (2) in excess of the authority of the committee; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . . CT Page 7417
 Thus, in reviewing a decision of the statewide grievance committee to issue a reprimand
 . . . the trial court . . . [does not take] on the function of a fact finder. Rather, [its] role is limited to reviewing the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct. . . . Additionally, in a grievance proceeding, the standard of proof applicable in determining whether an attorney has violated the [Rules] of Professional [Conduct] is clear and convincing evidence. . . . The burden is on the statewide grievance committee to establish the occurrence of an ethics violation by clear and convincing proof.
(Citations omitted; footnote omitted; internal quotation marks omitted.)Lewis v. Statewide Grievance Committee, 235 Conn. 693, 697-98,669 A.2d 1202 (1996); accord Practice Book § 2-38(f).
 III
The plaintiff raises three claims of error. The first is that there was insufficient evidence in the record to support the finding that the plaintiff reached an oral agreement with Cipriano to disclose the medical reports that the plaintiff obtained with John's authorization.
Applying the standards stated above, the court finds that there was substantial evidence to support the reviewing committee's finding that the plaintiff had entered into an agreement to disclose medical records he obtained. A key component of that evidence was Cipriano's testimony before the reviewing committee that the plaintiff had agreed to this arrangement. (ROR, p. 707-08.) Just as in a criminal case the testimony of a single witness is sufficient to satisfy the state's burden of proof beyond a reasonable doubt, here the testimony of Cipriano was sufficient to prove an agreement by clear and convincing evidence. See State v.Caballero, 49 Conn. App. 486, 492, 714 A.2d 1254, cert. denied,247 Conn. 924, 719 A.2d 1170 (1998).[3]
In addition to Cipriano's direct testimony, the reviewing committee had Cipriano's November 18 letter to the plaintiff confirming the agreement, the plaintiffs failure to contact Cipriano to discuss or dispute the terms of that letter, the board's specific finding that the plaintiff had promised to provide the medical records to the claimant's counsel, and the plaintiffs failure to deny the existence of the agreement at the formal CT Page 7418 hearing before the commissioner or in any of the written pleadings filed by the state with either the commissioner or the board. This evidence amply supported the finding that the plaintiff had entered into an agreement with Cipriano to provide medical records.
The plaintiff attacks this conclusion by questioning the credibility of Cipriano's testimony, emphasizing the plaintiffs vehement denial of the existence of an agreement before the reviewing committee, pointing to the absence of evidence confirming an agreement in the attorneys' and the commissioner's notes of the preformal hearing, and arguing that there was no specific allegation of an October, 1996 agreement to which the plaintiff should have responded at the formal hearing or in subsequent written pleadings. The plaintiff then concludes that, because of this contrary evidence, the proof is not clear and convincing. The plaintiff, however, confuses the standard of proof before the reviewing committee with the scope of review on appeal in this court. As stated, "[u]pon appeal, the court shall not substitute its judgment for that of the statewide grievance committee as to the weight of the evidence on questions of fact. . . ." Lewis v. Statewide Grievance Committee, supra,235 Conn. 697. "Thus, in reviewing a decision of the statewide grievance committee to issue a reprimand . . . the trial court . . . [does not take] on the function of a fact finder. Rather, [its] role is limited to reviewing the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct." (Citations omitted; footnote omitted; internal quotation marks omitted). Id., 698. Just as in a criminal appeal the reviewing court does not weigh the competing evidence to determine whether there was proof beyond a reasonable doubt, see Statev. Sanchez, 50 Conn. App. 145, 150-53, 718 A.2d 52, cert. denied,247 Conn. 922, 722 A.2d 811 (1998), this court cannot weigh the contrary evidence to determine whether the evidence supporting the reviewing committee's decision was clear and convincing. Applying the proper test for reviewing findings of the statewide grievance committee made by clear and convincing evidence, the court concludes that there was substantial evidence to support the finding that the plaintiff agreed to supply Cipriano with any medical records of the claimant that the plaintiff obtained.
 IV
The plaintiff next challenges the reviewing committee's consideration of the fact that the plaintiffs pleadings before the commissioner and the board contained no denial of the existence of an agreement to disclose medical records that the plaintiff obtained. The plaintiff apparently failed to object to the admission of these pleadings before the reviewing committee and now claims that their admission constituted plain error. CT Page 7419
Ordinarily, the failure of a party to raise a contemporaneous objection before an administrative agency authorizes the superior court to deny review of that issue. See Burnham v. Administrator, 184 Conn. 317,321-23, 439 A.2d 1008 (1981). Exceptions to this rule may exist for claims of constitutional or jurisdictional error. Id., 322. The plain error doctrine constitutes another exception to the contemporaneous objection rule, at least in our appellate courts. See Dubois v. GeneralDynamics Corp., 222 Conn. 62, 68-69, 607 A.2d 431 (1992). However, "[p]lain error is properly reserved for those extraordinary situations where the error is so obvious that the fairness and integrity of and public confidence in the judicial process would be impaired were we to fail to address an issue that was not raised or preserved at trial." (Internal quotation marks omitted.) Id., 69.
Assuming the plain error rule applies to appeals from decisions of the statewide grievance committee, the court does not find plain error here. The admission and consideration of the plaintiffs pleadings before the commissioner and the board did not violate any statute, rule, constitutional provision, or binding case law. Given that Cipriano had asserted on a number of occasions, both orally and in writing, before the commissioner and the board, that the plaintiff had breached an agreement to disclose records, (ROR, pp. 407-08, 423-24, 441, 463-64, 493, 496, 516, 800-01, 826-30), the plaintiffs failure to deny the existence of the agreement was logically relevant, if not highly probative.[4] There was, in short, nothing extraordinary about the reviewing committee's consideration of this evidence so as to create plain error.
 V
The plaintiffs final ground of appeal is that the reviewing committee was not impartial and should have disqualified itself. This ground of error arises from the existence of a different grievance complaint, AaronBayer v. Loida Deborah John-Nicholson, Grievance Complaint No. 99-0222, filed against John's sister, Loida John-Nicholson, who was also an Assistant Attorney General. This complaint alleged that John-Nicholson misappropriated files from the plaintiffs computer and inappropriately made use of those files in assisting John with her workers' compensation claim against the state. (Supplemental Return of Record ("Supp. ROR"), p. 82.)
Deputy Attorney General Aaron Bayer filed the grievance against John-Nicholson in September, 1999, some three months after John's filing of the grievance against the plaintiff. (Supp. ROR, p. 82.)[5] On June 15, 2001, after conducting hearings, the John-Nicholson reviewing committee issued its decision dismissing the complaint. The reviewing CT Page 7420 committee relied in part on a letter from the Office of the Attorney General stating that it no longer desired to pursue the complaint because it was not aware of any evidence that John-Nicholson had used any confidential information to assist her sister in pursuing the workers' compensation claim or that any confidential information was actually used during those proceedings. The reviewing committee also found "credible [John-Nicholson's] testimony that she believed that she was taking steps to bring attorney misconduct to the attention of her supervisor." (Supp. ROR, pp. 82-83.)
The plaintiff here alleges impropriety in that the same three persons who comprised the reviewing committee in his case contemporaneously heard the John-Nicholson case, in which John-Nicholson's defense was that the plaintiff had committed misconduct that she was attempting to bring to her supervisor's attention. (Supp. ROR, p. 20.) There is no dispute that the same three member reviewing committee heard both cases. It is also true that the hearings and decisions overlapped. As stated, hearings in the present case took place on May 11, 2000, September 14, 2000, and November 9, 2000, and the reviewing committee rendered a decision on July 20, 2001. The hearings in John-Nicholson took place on June 8, 2000 and February 16, 2001, in advance of its June 15, 2001 decision. (Supp. ROR, p. 82.)
The plaintiff acknowledges that he failed to raise the issue of disqualification or lack of impartiality before the reviewing committee. The plaintiff raised this issue for the first time in a request to review filed with the statewide grievance committee. The statewide grievance committee concluded that the plaintiff had waived his right to make this argument by failing to present it to the reviewing committee. It then rejected the claim on its merits. (ROR, p. 1519.)
The statewide grievance committee renews the claim of waiver here. The court, however, finds the issue reviewable. Although the plaintiff did not request the reviewing committee to disqualify or recuse itself, John-Nicholson did so, expressing a similar concern that the same reviewing committee should not hear both cases because of the risk that it might improperly consider evidence from one case in the other. The reviewing committee denied the request. (Supp. ROR, pp. 8, 21-22, 61-62.) The reviewing committee thus had an opportunity to correct the proposed inequity, thereby satisfying the purpose of the contemporaneous objection rule. See Tessmann v. Tiger Lee Construction Co., 228 Conn. 42, 57 n. 10, 634 A.2d 870 (1993). Further, the plaintiff did raise the claim of disqualification before the statewide grievance committee, and it is that committee's decision that the court now reviews. The court concludes that the claim that the reviewing committee should not have heard both grievance complaints was adequately raised below, CT Page 7421
The plaintiffs failure to raise this issue before the reviewing committee is not without significance. It reveals that, at the time, the plaintiff did not see an obvious risk that the reviewing committee might be prejudiced by its concurrent consideration of the John-Nicholson
grievance. The plaintiff represents in his brief that, despite the fact that the John-Nicholson hearings were open to the public; Practice Book § 2-35(c); he did not learn of the antagonistic nature of John-Nicholson's defense until seven months after his hearings were closed. (Plaintiff's Brief, p. 33 n. 20.) Assuming that representation is true, the plaintiff had the information necessary to move for disqualification in early June, 2000, over a month before the reviewing committee rendered its decision in his case. The plaintiff nonetheless failed to act. His failure to complain about the reviewing committee's composition "suggests that [the plaintiff] did not believe that it was unfair in light of the record of the case at the time." State v.Andrews, 248 Conn. 1, 19-20, 726 A.2d 104 (1999).
The rules governing the disqualification of administrative hearing officers are less stringent than those contained in the canons of judicial ethics. Transportation General, Inc. v. Department ofInsurance, 236 Conn. 75, 76, 670 A.2d 1302 (1996). "The mere appearance of bias that might disqualify a judge will not disqualify an arbitrator." (Internal quotation marks omitted.) Rado v. Board of Education,216 Conn. 541, 556, 583 A.2d 102 (1990). It is presumed that members of administrative boards acting in an adjudicative capacity are unbiased. See Jutkowitz v. Department of Health Services, 220 Conn. 86, 100,596 A.2d 374 (1991). The party who contends that an adjudicator is biased bears the burden of proving the disqualifying interest. Id. "To overcome the presumption of impartiality that attends administrative determinations, a plaintiff must demonstrate either actual bias or the existence of circumstances indicating a probability of . . . bias too high to be constitutionally tolerable." (Internal quotation marks omitted.) Transportation General, Inc. v. Department of Insurance, supra, 76.[6]
There is no evidence of actual bias. It would have been obviously improper for the reviewing committee in this case to have considered any of the evidence from the John-Nicholson hearings against the plaintiff. But, as found by the statewide grievance committee, the plaintiff "offered no proof that the reviewing committee in his grievance considered `extrajudicial and prejudicial evidence' from another case." (ROR, 1519.) The plaintiff does not point to anything relied on by the reviewing committee that does not come from the record in this case. As shown above, there is ample evidence, all from the record of this case, that the plaintiff breached an agreement and thereby violated the Rules CT Page 7422 of Professional Conduct.
The only real question is whether there exist "circumstances indicating a probability of . . . bias too high to be constitutionally tolerable." (Internal quotation marks omitted.) Transportation General, Inc. v.Department of Insurance, supra, 236 Conn. 76. The premise of the plaintiffs argument is that the reviewing committee could not have put aside its knowledge of John-Nicholson's defense that the plaintiff committed misconduct. But it would not have been logically inconsistent for the committee to have credited John-Nicholson's testimony that she believed the plaintiff to have committed misconduct, as it did in her case, and for the committee concurrently to have found, in the plaintiffs case, that no misconduct actually occurred. It is not complicated to reason that John-Nicholson's subjective beliefs are not necessarily true. Further, John-Nicholson's apparent belief that the plaintiff had breached an agreement is not the type of emotional or inflammatory evidence that reasonable committee members could not put aside in deciding the merits of the plaintiffs case.
The presumption that adjudicators are unbiased means that they will disregard extraneous matters, just as judges do every day in hearing court trials and motions. The judicial and administrative systems rely on the good faith of those called to serve as neutral arbiters. In the absence of any proof by the plaintiff that the committee members in this case did not act in good faith and instead relied on evidence from theJohn-Nicholson case, the plaintiff cannot meet his burden of proof. At the very least, the grievance committee's decision rejecting the plaintiffs claim was not "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . ." (Internal quotation marks omitted.) Lewis v. Statewide GrievanceCommittee, supra, 235 Conn. 697-98.
 VI
The plaintiff having failed to sustain the grounds for his appeal, the appeal is dismissed.
Carl J. Schuman Judge, Superior Court